

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00333-CR

CHARLES JOSEPH BALLARD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 70247-E, Honorable Bradley S. Underwood, Presiding

December 15, 2017

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL, JJ., and HANCOCK, S.J.[1]

Appellant was indicted for three counts of indecency with a child.[2]  Count One alleged indecency by contact and Counts Two and Three alleged indecency by exposure. Following a jury trial, appellant was convicted on all three counts.  After hearing the punishment evidence, the same jury assessed appellant's punishment at seven years' incarceration in the Institutional Division of the Texas Department of Criminal Justice (ID-

---

[1] Mackey K. Hancock, Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] *See* TEX. PENAL CODE ANN. § 21.11(a) (West Supp. 2017).

TDCJ) on Count One; five years' incarceration, suspended, on Count Two; and ten years' incarceration, suspended, on Count Three.

Appellant has perfected his appeal and presents four issues for the Court's consideration. First, appellant contends that the trial court committed reversible error in admitting his recorded statement into evidence. Second, appellant contends that the trial court committed reversible error by admitting evidence of an extraneous offense in violation of Texas Rule of Evidence 404(b). Third, appellant contends that the trial court erred by admitting the same extraneous evidence in violation of Texas Rule of Evidence 403. Finally, appellant contends that his trial counsel was ineffective. We will affirm.

## Factual and Procedural Background

Appellant does not contend that the evidence supporting the jury's verdicts was insufficient. Accordingly, we will address only so much of the record as is required for our determination of the issues presented.

On February 3, 2015, J.H., appellant's niece, made an outcry to her fourth-grade teacher, Kristina Willis. The outcry concerned an event that occurred when J.H. was five years of age. According to the child, appellant had showed her his private parts. J.H. described them as resembling "an odd shaped hot dog." J.H. also advised Kristina of another incident when she was six years of age where appellant invited her into a hot tub and J.H. said she could see his private parts. During this incident, appellant also had J.H. remove her swimsuit bottom. Kristina reported her conversations with J.H. to J.H.'s mother and, later the same date, Kristina reported the outcry to the Child Protective Services.

2

The following day, after the Potter County Sheriff's Office initiated its investigation, J.H. was taken to the Bridge Children's Advocacy Center for a forensic interview. During her interview at the Bridge, J.H. gave more details regarding the two incidents that were described in her original outcry statement. Additionally, J.H. described a third incident that occurred in a tent outside of her grandfather's home. In this incident, appellant exposed his penis to her. J.H. also advised the interviewer that appellant had touched her genitals on three different occasions. On one of these occasions, J.H. had gone to appellant's RV to ask him to fix her phone. Appellant asked J.H. if he could touch her privates. J.H. demonstrated to the interviewer how appellant touched her privates by making a circular motion with her hand.

Following the forensic interview, J.H. was given a sexual assault examination. There was no evidence of trauma detected. According to the sexual assault nurse examiner, the finding of no trauma was expected due to the length of time between the incidents and the outcry and the nature of the reported incidents.

On February 5th, appellant was taken to the Potter County Sheriff's Office to be interviewed about the allegations made against him. A review of the record reveals that appellant voluntarily accompanied the deputies to the Sheriff's Office. Appellant was given his *Miranda*[3] warnings before he was questioned. Appellant never admitted that he had done any of the acts with which he was ultimately charged. Eventually, appellant requested an attorney and the interview was terminated and appellant was taken back to his home.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694(1966).

During the trial of the case, J.H. testified about each of the events she had described in her outcry. Appellant's trial counsel cross-examined J.H. vigorously and was able to point out some inconsistencies in her testimony. However, J.H.'s basic testimony never faltered.

Former Potter County Deputy, Charles Jones, also testified. On cross-examination, Jones was questioned about the fact that appellant was around a number of young females but that "the only one you found - - any evidence to bring in here was J.H. Is that correct?" Jones answered, "Yes, that is correct." In response to that testimony, the State proffered the testimony of B.M., the daughter of appellant's ex-girlfriend, to refute the mistaken inference created by the exchange between Jones and appellant's trial counsel. The inference, according to the State, was that appellant had never attempted any type of inappropriate behavior with any other young girl. Appellant's trial counsel objected that the evidence lacked any relevancy and was unfairly prejudicial. The trial court overruled the objection and B.M.'s testimony was allowed before the jury.

B.M. testified about several instances where appellant acted in a sexually inappropriate manner. She described one occasion when appellant asked her to go to the hot tub with him. When she did, appellant asked her to kiss him, but she refused his entreaty. On another occasion, appellant entered B.M.'s mother's room naked as B.M. was sleeping in her mother's bed with J.H. and J.H.'s twin sister.[4] Appellant encouraged the girls to stay but they left.

After the State presented its evidence, appellant testified and denied the allegations. Members of appellant's family likewise testified on behalf of appellant. They

---

[4] According to B.M.'s testimony, appellant would take his nieces to B.M.'s mother's house.

testified that they did not believe J.H. and had not seen anything that would support her testimony.

After hearing the evidence, receiving the court's charge, and hearing the arguments of counsel, the jury convicted appellant on all three counts. Appellant has appealed via four issues. Appellant argues that the trial court erred in admitting a recording of his statement and the testimony of B.M. Appellant also contends that he received ineffective assistance of counsel. Disagreeing with appellant's contentions, we will affirm.

## Admission of Appellant's Statement

Appellant's complaint regarding his recorded statement is that he requested counsel but the deputies who were questioning him did not stop the interview. Under appellant's theory, the action of the deputies amounted to coercion and, therefore, the statement was not admissible.

### Standard of Review

When reviewing a trial court's ruling on the admissibility of evidence, an appellate court must determine whether the trial court abused its discretion. *See Carrasco v. State,* 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Put another way, the appellate court must uphold the trial court's decision if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* In making these determinations, the appellate court is to review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

Applicable Law

Any statements made by appellant while in custody may not be used unless all of the procedural safeguards in place to ensure the appellant's right against self-incrimination have been followed.  *See Gardner v. State,* 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).  At trial, the appellant bears the initial burden of proving that the statement was the product of custodial interrogation.  *Id.*  The Court of Criminal Appeals has found four general situations that may constitute custody for purposes of *Miranda* and Article 38.22.[5]  Those are:

(1) The suspect is physically deprived of his freedom of action in any significant way;

(2) A law enforcement officer tells the appellant he is not free to leave;

(3) Law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and

(4) There is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave.

*Id.* (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)).

Analysis

The record before this Court demonstrates that, contrary to appellant's position, he was not in custody at the time he gave his statement.  When appellant was first visited by the Potter County deputies, they requested that he voluntarily come to the Sheriff's Office with them.  Appellant agreed to do so and was transported in a patrol car.  He was not handcuffed or restrained in any manner.  Additionally, the record clearly demonstrates that appellant was advised at the beginning of the interview that he was not under arrest

---

[5] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2017).

and was free to leave at any time. Further, the testimony demonstrates that, when appellant indicated he wanted to conclude the interview, he was again advised he could do so and was taken back to the place where the deputies had originally visited him. Under this record, we can positively state that appellant was not in custody when he made his recorded statement. *See id.*

However, appellant contends that the interview should have been terminated earlier because he requested the assistance of an attorney. Even though we have determined that he was not in custody and, therefore, his right to remain silent was not implicated, we will address this argument. If we assume for purposes of argument that appellant was in custody, a review of the record reveals that appellant discussed with the deputies whether he needed to have an attorney present. Each time he brought this subject up, the deputies advised him that he was the only one who could make that decision and they could not advise him one way or the other. On each occasion, appellant continued to visit with the deputies and answer their questions. Under these circumstances, appellant's mentioning of a lawyer and subsequent actions render his request equivocal. *See State v. Gobert,* 275 S.W.3d 888, 892-93 (Tex. Crim. App. 2009). Finally, the record positively demonstrates that as soon as appellant made an unequivocal request for an attorney, the interview was terminated. Under the totality of the circumstances, the trial court did not err in admitting the statement. *See id. at* 893. Appellant's first issue is overruled.

## Admission of Extraneous Conduct Evidence

Appellant's second and third issues revolve around the trial court's admission of the testimony of B.M. B.M. is the daughter of appellant's former girlfriend. After

appellant's trial counsel questioned Deputy Jones, the principal investigating officer, about whether any evidence was found implicating appellant's relationship with several other young girls, the State was permitted to introduce B.M.'s testimony. Before B.M. was permitted to testify, the trial court ruled that trial counsel had opened the door for such testimony by leaving the inference in front of the jury that no child, other than J.H., had made an outcry regarding appellant's conduct. Appellant's objection was that the evidence was not relevant and that the prejudicial effect of B.M.'s testimony far outweighed its probative value.

On appeal, appellant contends that the admission of B.M.'s testimony was in violation of Rules 404(b) and 403 of the Texas Rules of Evidence. TEX. R. EVID. 403, 404(b).[6]

Standard of Review

Both of appellant's issues contend that the trial court erred in the admission of evidence. Accordingly, we review such allegations under an abuse of discretion standard. *See Carrasco*, 154 S.W.3d at 129. Another way of explaining this is that the appellate court must uphold the trial court's decision if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* In making these determinations the appellate court is to review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

Rule 404(b) Analysis

Rule 404(b) provides as follows:

(b) Crimes, Wrongs, or Other Acts.

---

[6] Further reference to the Texas Rules of Evidence will be by "Rule ____."

8

(1) Prohibited Uses. --Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in Criminal Cases. --This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence – other than that arising in the same transaction – in its case-in-chief.

In the current matter, appellant does not contend that he did not get notice of the State's intended use of the testimony of B.M. Appellant's argument is grounded on the theory that the testimony of B.M. had no relevance except to provide that appellant acted in conformity with the character of a person who would sexually exploit children. Such a proposition ignores how this evidence came to be placed before the jury. The questioning of Deputy Jones regarding the other children who appellant had contact with opened the door to B.M.'s testimony being admissible. As such, B.M.'s testimony was presented not to prove character conformity, but rather to dispel the impression that the only young female to make an outcry against appellant was J.H. Evidence of unadjudicated extraneous conduct may become admissible if the appellant opens the door to admission of such evidence. *See Hayden v. State,* 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). In this context, the testimony of B.M. is relevant to an issue other than character conformity. *See Johnston v. State,* 145 S.W.3d 215, 220 (Tex. Crim. App. 2004). Therefore, the requirement of Rule 404(b) is satisfied. *See id.*

Rule 403 Analysis

Rule 403 provides as follows:

9

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

In its response to appellant's issue three, the Rule 403 issue, the State contends that appellant has procedurally defaulted this issue because he did not properly preserve it in the trial court. The record reflects that once the trial court ruled that appellant had opened the door to B.M.'s testimony, appellant made the following objection: "Well, the probative value, obviously, is going to be outweighed by the prejudicial effect of this question; therefore, we would ask for - - object on those grounds." This objection is nothing more or less than a general objection, presumably under Rule 403. A general 403 objection is not sufficient to preserve error because it fails to identify for the trial court which of the five distinct grounds for excluding evidence listed in Rule 403 is being argued as a basis for exclusion. *Checo v. State,* 402 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Such a general objection fails to apprise the trial court which of the Rule 403 factors was being relied upon; accordingly, the trial court had no way of assessing the propriety of appellant's objection. *See id.* We, therefore, overrule appellant's issue regarding Rule 403.

## Ineffective Assistance of Counsel

Appellant's final issue claims that he received ineffective assistance of counsel. By his argument, appellant contends that the act of opening the door to the testimony of B.M. was an act of ineffective assistance of counsel sufficient to warrant this Court's reversing the verdict of the jury.

<u>Applicable Law</u>

To establish a claim of ineffective assistance of counsel, appellant must show (1) counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that such deficient performance was prejudicial to his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Smith v. State,* 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).

Appellate review of a claim of ineffective counsel is highly deferential and is cloaked with the presumption that counsel's actions fell within the wide range of reasonable and professional assistance. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the usual situation, the record on direct appeal will not be sufficient to show that trial counsel's representation was deficient so as to overcome the presumption that counsel's conduct was reasonable and professional. *Id.* When reviewing the adequacy of counsel's representation, we look at the totality of the representation and do not view isolated instances of alleged ineffectiveness alone. *Garcia v. State,* 887 S.W.2d 862, 880 (Tex. Crim. App. 1994). Appellant is entitled to reasonably effective counsel, this does not mean errorless counsel but rather objectively reasonable representation. *Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). It is appellant's burden to satisfy the requirement to show that counsel's actions fell below an objective standard of reasonableness. *See id.*

<u>Analysis</u>

Initially, we observe that there was no motion for new trial filed in this matter. This leaves us with only the record on direct appeal to consider. The record on direct appeal is normally insufficient to support a claim of ineffectiveness of counsel. *Salinas v. State,*

11

163 S.W.3d 734, 740 (Tex. Crim. App. 2005). This is so because it is typically impossible to ascertain why counsel took the action in question from the record of a direct appeal. *See id.* It is appellant's contention that there could be no trial strategy that could have led counsel to ask the line of questions that resulted in B.M. being allowed to testify. However, simply alleging there could be no strategy is not the same as demonstrating there was no strategy that would have supported asking the questions that opened the door to B.M.'s testimony. This is why the record on direct appeal normally will not support an ineffective counsel claim and why, in this instance, the record on direct appeal is insufficient to support appellant's allegation. *See id.*

Finally, appellant's claim does not explain why, even were we to find that counsel was ineffective for opening the door to B.M.'s testimony, such action resulted in the rendition of a verdict that we cannot view as reliable. *See Strickland,* 466 U.S. at 687. Without this analysis, we cannot say that appellant has met the second prong of the *Strickland* test. *See id.*

For the reasons enumerated above, we overrule appellant's final issue.

Conclusion

Having overruled all of appellant's issues, we affirm the judgment entered by the trial court.

Mackey K. Hancock<br>Senior Justice

Quinn, C.J., concurring in the result.[7]
Campbell, J., concurring.

Do not publish.

---

[7] Chief Justice Quinn joins in the opinion and reasons for which it disposes of issues one, two, and four. Further, he concurs in the disposition of issue three for the reason that appellant opened the door to the evidence as discussed by the Court when disposing of issue two.