

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00052-CR

PERVIS LEE ANDREWS JR.                                              APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1436114D

----------

## MEMORANDUM OPINION[1]

----------

Pervis Lee Andrews Jr. appeals from his conviction and life sentence for aggravated assault. He brings four points on appeal: (1) the trial court erred by excluding a defense-of-a-third-person instruction in the jury charge; (2) the trial court erred by excluding a jury charge instruction on self-defense against multiple assailants; (3) the trial court erred by admitting an autopsy photograph over his

----

[1]*See* Tex. R. App. P. 47.4.

rule 403 objection; and (4) the trial court erred by admitting and publishing to the jury his interview with Arlington police despite his article 38.22 objection. We affirm.

## Background

Appellant was driving a car in the parking lot of the Lincoln Square shopping center in Arlington, around 2:00 a.m. when several bars located in the shopping center were closing. His wife was a passenger in his car. Dustin McGee was driving a car in the opposite direction, and he turned in front of appellant's car so that his passenger, Terrance Jackson, was facing appellant's car. Because McGee was turning slowly, appellant honked his horn at McGee, who stopped his car mid-turn. Both of McGee's windows were down. Appellant got out of his car, came over to McGee's, and asked if the two men had a problem. When Jackson said no, appellant got back in his car, and the two drivers proceeded out of the intersection.

After turning left at the intersection, McGee made a U-turn, then turned right at the same intersection so that he was heading the same direction as appellant. He then drove in the opposite lane around a line of cars so that he was parallel to appellant's car. According to Jackson, McGee pulled his car into a parking spot to the right, and appellant pulled in about two spaces to the right of McGee's car so that appellant's driver's side was adjacent to the passenger side of McGee's car. But according to appellant, McGee pulled his car in front of appellant's, blocking his way.

2

Although Jackson, appellant, and appellant's wife disagreed on the details, no one disputes that appellant and McGee got out of the cars and approached each other and that at some point, both Jackson and appellant's wife got out of the cars. Appellant and McGee had a brief physical altercation during which appellant stabbed McGee with a knife. Appellant later told police that McGee had hit him with a bat and was swinging at him again when appellant pulled out the knife to defend himself. McGee ended up in front of a bar called Sherlocks where a patron attempted to assist him by performing CPR. He later died.

The State charged appellant with murder and aggravated assault with a habitual offender notice. *See* Tex. Penal Code Ann. § 12.32(a) (West 2011), § 12.42(b) (West Supp. 2017), § 19.02(b)(1), (2) (West 2011), § 22.01(a)(1) (West Supp. 2017), § 22.02(a)(2), (b) (West 2011). A jury convicted him of aggravated assault and assessed his sentence at life confinement.

### Defense-of-a-Third-Person Instruction

In his first point, appellant contends that the trial court should have granted his request to include a defense-of-a-third-person instruction in the charge. According to appellant, the evidence at trial raised this defense because of his wife's proximity to the altercation: "A jury should have been able to consider the notion that [he] was fighting back to protect his wife."

3

## A. Applicable Law

When deciding whether a defensive instruction is proper, courts look at the evidence supporting a defensive charge, not the evidence refuting it. *Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim. App. 2015). A defendant is entitled to every defensive instruction raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). It is not for the trial court to judge the reasonableness or viability of the alleged defense; such a determination is rightfully left to the trier of fact. *Sanders v. State*, 707 S.W.2d 78, 79–80 (Tex. Crim. App. 1986), *disavowed in part on other grounds by Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990).

The penal code provides that a person is justified in using deadly force against another to protect a third person (1) if he would have been justified in using deadly force to protect himself against the unlawful deadly force he reasonably believed to be threatening the third person he was seeking to protect, and (2) if he "reasonably believe[d] his intervention [was] immediately necessary to protect the third person." Tex. Penal Code Ann. § 9.33 (West 2011). Thus, a person is justified in using deadly force to protect a third person in any situation in which the third person would be justified in using deadly force to protect herself. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Although the defendant has to reasonably believe he must act

4

immediately, he can have a reasonable belief that force is immediately necessary even if the objective evidence shows the person was never in any real danger. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Force is "immediately necessary" to protect oneself or another from a person's use of unlawful force when it is needed at that moment—"when a split second decision is required." *Henley v. State*, 493 S.W.3d 77, 89–90 (Tex. Crim. App. 2016).

## B. Evidence at Trial

In an interview with police about a week after the fight, appellant told his version of the events. He claimed that

- McGee and Jackson were yelling at him threateningly from the car,

- they pulled up alongside his car quickly and aggressively,

- McGee pulled his car in front of appellant's car in the middle of the street, blocking appellant's car,

- he thought McGee and Jackson were trying to carjack him,

- after getting out of his car, McGee repeatedly threatened appellant,

- the fight took place in the middle of the street,

- McGee and Jackson both had bats,

- McGee hit him once with a bat, so he pulled out his knife as McGee was swinging the bat at him a second time,

5

- Jackson was coming after him as well, which he had not noticed, and the "chick"[2] he was with yelled, "Don't do that,"

- he was trying to protect himself,

- he had no idea whether his knife connected with McGee and what happened was a freak accident, and

- he slashed the tires on McGee's car so that McGee and Jackson could not follow him.

Appellant's wife testified that when McGee and Jackson pulled up alongside appellant's car, Jackson was hanging out of the window and cussing; she was scared because what McGee and Jackson were doing "wasn't right." McGee yelled, "On blood," which she understood to be "gang talk." McGee and Jackson were also saying, "What's up?" McGee blocked appellant's car. But according to appellant's wife, McGee then parked his car and appellant parked to the right of it. The altercation happened quickly; all of the men got out of the cars. At one point, she got out of appellant's car and stood by him, but she went back to the car.[3]

_____

[2]Appellant would not tell the police the name of the woman he claimed he was with because he said he did not want his wife to know he had been out with another woman. But appellant's wife, who testified at trial only because the State had subpoenaed her, confirmed that she was the woman who was with appellant the night of the fight.

[3]She later testified on cross-examination that she only got out of the car to yell at Jackson, "Hey, don't do that," when it appeared Jackson was about to hit appellant. But she got right back in the car.

The fight happened on the driver's side of McGee's car; appellant was between McGee and Jackson. She did not see anyone with a bat, but when she saw Jackson about to hit appellant, she got out of appellant's car and yelled, "Don't do that." At that point, appellant looked at her, and McGee hit appellant. Although Jackson stayed by appellant and McGee, the fight was only between appellant and McGee. Appellant slashed the tires on McGee's car so that McGee and Jackson would not follow appellant and his wife. Everything happened quickly.

Jackson testified that when McGee and appellant parked, they "immediately" got out of their cars, but he exited McGee's car slowly. McGee and appellant were "chest bumping" and "arguing, neck to neck" for about ten to fifteen minutes. After that, appellant made a call on his phone, in which he said, "Hey, y'all pull up with the straps. I got a .22, but this ain't enough . . . ." This concerned Jackson, who tried to get McGee to leave. McGee started to get back in his car, but appellant came over to the driver's side of McGee's car and started arguing with him again. He was not sure what prompted the fight, but "they started exchanging punches." The fight happened quickly, and by the time Jackson got to McGee's driver's side, McGee was already holding his shoulder and backing up. Jackson got in front of appellant, but McGee yelled that he had a knife and asked Jackson to move the car, so Jackson got into the driver's side of McGee's car. Appellant slashed the tires on McGee's car, got back in his own car, and left.

7

Jackson testified that "the lady" with appellant might have gotten out of that car for "like a few seconds," but then she got back in and "remained in the car for the whole time." He thought she had exited appellant's car when appellant and McGee first started arguing. According to Jackson, the woman "didn't interact with anything that night or what we had going on or what he was telling her to do."

## C. Application

We hold that none of this evidence supports an instruction on defense of a third person. Other than appellant's assertion that he thought McGee and Jackson were going to carjack him, no evidence from any source shows an imminent threat of force to appellant's wife that would have justified the use of deadly force against McGee. All of the evidence shows that while she was in appellant's car, she was on the opposite side of where the fight occurred. No evidence supports a conclusion that while she was out of the car, a threat of any force, much less deadly force, was directed toward her or that appellant would have perceived such a threat. Thus, we hold that the trial court did not err by refusing to include an instruction on defense of a third person in the charge.

Further, even if the trial court erred by refusing to give the instruction, that error was harmless because the evidence does not show any perceived threat to appellant's wife separate from the threat to appellant, and the jury implicitly rejected appellant's defense of self-defense. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.

8

Crim. App. 1991); *Repman v. State*, No. 09-16-00458-CR, 2018 WL 1188819, at *3 (Tex. App.—Beaumont Mar. 7, 2018, no pet.) (mem. op., not designated for publication); *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd); *Curtis v. State,* 754 S.W.2d 460, 462 (Tex. App.—Dallas 1988, pet. ref'd).

We overrule appellant's first point.

**Self-Defense Against Multiple Assailants Instruction Not Preserved**

In his second point, appellant challenges the trial court's failure to include an instruction on self-defense against multiple assailants in the jury charge. But appellant did not request such an instruction or object to its absence in the charge. Because no rule or statute requires the trial court to give this type of instruction sua sponte, appellant was required to preserve this alleged error at trial. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); Tex. R. App. P. 33.1; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Posey v. State*, 966 S.W.2d 57, 62–64 (Tex. Crim. App. 1998) (explaining that failure to request an instruction on unrequested traditional defenses and defensive issues not otherwise required by statute or rule is not subject to *Almanza* egregious-harm review). He did not; therefore, we overrule his second point. *See Vega*, 394 S.W.3d at 519.

**General Rule 403 Objection Did Not Preserve Appellate Argument**

In his third point, appellant contends the trial court reversibly erred by admitting an autopsy photograph of McGee, in which the stab wound is faintly

9

visible, but the thoracotomy done by the medical examiner is prominent. Appellant objected "pursuant to Rule 403." The trial court overruled the objection and admitted the photograph.

Appellant's general rule 403 objection was insufficient to preserve this point for our review. *See* Tex. R. App. P. 33.1(a)(1); *Checo v. State*, 402 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Phelps v. State*, 999 S.W.2d 512, 520 (Tex. App.—Eastland 1999, pet. ref'd); *Williams v. State*, 930 S.W.2d 898, 901 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *see also Ferguson v. State*, Nos. 02-16-00451-CV, 02-16-00452-CV, 2017 WL 6047667, at *3 n.3 (Tex. App.—Fort Worth Dec. 7, 2017, pet. ref'd) (mem. op., not designated for publication) (applying same principle to conclude that appellate argument not preserved).[4] Accordingly, we overrule his third point.

### Statement to Police Voluntary

Appellant's fourth point challenges the trial court's determination that his statement to the police was voluntary and thus admissible under article 38.22 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (West 2018).

---

[4]If appellant's general objection had preserved his rule 403 complaint, any error in admitting the evidence was harmless because appellant did not object to State's exhibit 36, a photograph which also shows the prominent incision in relation to the small knife wound. *See Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986).

10

When the State offered its Exhibit 31, a recording of an interview between appellant and Arlington police, appellant objected that the entirety of the statement was inadmissible because he did not knowingly or intelligently waive his *Miranda* rights. Specifically, appellant clarified that he did not waive his rights because instead of expressly telling the officers that he agreed to answer their questions, he started to ask the officers questions. Appellant also argued that the officers were aware he had been diagnosed as schizophrenic and that the booking information showed that he had been taking "several different medications," including Haldol. Appellant agreed, however, that other than his telling the officers he was taking Haldol, there was no evidence he was actually taking it at the time.

After holding a hearing outside the jury's presence, the trial court determined that the interview recording was admissible and made the following specific findings:[5]

> First of all, I find that 38.22 was complied with, that the -- based on the totality of the testimony and State's Exhibit 31, which will be admitted as well as Court's Exhibit 1, that the defendant voluntarily waived his rights.
>
> The interrogation was not -- the duration of the interrogation was not particularly lengthy. He was not -- the defendant was not deprived of any necessities.

---

[5]*See Alford v. State*, 358 S.W.3d 647, 651 & n.6 (Tex. Crim. App. 2012) (holding that trial court satisfies article 38.22 requirement of making written findings regarding voluntariness of statement by making verbal findings on the record), *cert. denied*, 568 U.S. 815 (2012).

11

There was no coercion or inducement that was made to the defendant. There was no threats of violence made to the defendant.

The defendant did not appear to be hearing voices or hallucinating. He appeared competent and had all of his mental faculties and did not appear to be intoxicated.

He was coherent. He was making complete sentences and he willingly participated in the interview. In other words, yes, he was asking questions, but there is no doubt in the Court's mind that he had a story that he wanted to tell these police officers. He was aware of the circumstances and he was aware of the charges.

He did understand his rights, that – he answered that in the affirmative at first. And he also indicated a willingness to talk to police officers even before his rights were read.

Based upon the totality of the circumstances, I find the defendant did knowingly, intelligently and voluntarily waive his rights. And his statement is going to be admissible, subject to the -- the limitations that we've had on it already, which is the times on Court's Exhibit 2 that have been redacted out.

On appeal, appellant contends that the interview was inadmissible because, specifically,

- the detective implied at the beginning of the interview that if appellant would talk to the detectives and "clear things up," he might be able to be released from jail; thus, the detectives deceived him into thinking that he could be released from jail by talking to them; and

- thirty six minutes and nineteen seconds into the interview, appellant unequivocally asked for a lawyer to be present, but the detectives did not cease questioning him.

But appellant also argues generally that under the totality of the circumstances, he did not knowingly, voluntarily, and intelligently waive his right to remain silent.

Even though appellant did not raise the specific complaints above in the trial court, *see Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011) (holding that a defendant's appellate article 38.22 arguments must comport with his objections at trial), he did make the general argument that under the totality of the circumstances, he did not knowingly and intelligently waive his rights, *Umana v. State*, 447 S.W.3d 346, 356 (Tex. App.—Houston 2014, pet. ref'd) (applying *Leza* but also reviewing totality of circumstances). Because this appellate argument comports with his trial argument, we will review this point. *See* Tex. R. App. P. 33.1, 38.1(f).

### A. Standard of Review

We conduct a bifurcated review of a trial court's ruling on a *Miranda*-violation claim, affording almost total deference to the trial judge's rulings on questions of historical fact and on application-of-law-to-fact questions that turn on credibility and demeanor, and reviewing de novo the trial court's rulings on application-of-law-to-fact questions that do not turn on credibility and demeanor. *Alford*, 358 S.W.3d at 652–53. The State has the burden of proving by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168, 107 S. Ct. 515, 522 (1986); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Although we will not presume a valid waiver from the accused's

13

silence after being warned, or from the fact that the accused eventually gave a confession, we can in some cases infer waiver from the actions and words of the person interrogated. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979); *Joseph*, 309 S.W.3d at 24. The United States Supreme Court has articulated this test for evaluating whether an accused's waiver was knowing, voluntary, and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986) (citations omitted); *Joseph*, 309 S.W.3d at 25–27 (applying test to issue of waiver under both *Miranda* and article 38.22). The totality-of-the-circumstances approach requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Joseph*, 309 S.W.3d at 25 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572 (1979)).

## B. Evidence of Voluntariness

The evidence does not show that the police extracted a statement from appellant based on intimidation, coercion, or deception. After one of the officers read appellant his rights in a measured and clear manner, appellant asked the

14

officers several questions before admitting that he was in Lincoln Square the night of the fight with McGee. The officers answered appellant's questions: they told him that he was being held on suspicion of murder, that they had spoken to witnesses who saw what had happened, and that they wanted to give appellant an opportunity to tell his side of the story because they did not know whether he had an intent to kill McGee that night. Appellant began to talk about what happened only after he seemed convinced that the officers had evidence showing he was there.

The interview lasted only an hour and half, and the officers never threatened appellant in any way. The officers told appellant more than once that they could not "put words in his mouth." When appellant said he did not want the interview recorded, they explained that the interview was being recorded so that they could not later lie about what appellant had said to them.

Appellant told the officers that "a chick" was in the car with him. When the officers pressed appellant for her name, he said he did not want to tell them her name. He then said he needed to talk to his lawyer first because he did not want his wife to know he had been with another woman. When the officer tried to clarify whether appellant wanted to talk to his lawyer about "the girl," appellant said, "Period," but then he immediately thereafter said "because" he did not want his wife to "get wind of it." When appellant continued talking, one of the officers stopped him "because [appellant had] mentioned a lawyer" and asked appellant if he just did not want to talk about "the girl" or if he was "okay with continuing to

15

talk" to them. Appellant said he knew the officers were probably recording the interview and then he continued to talk, saying he was telling the officers the truth about what had happened that night. The officers again asked him if they could ask more questions, and appellant said "Yeah." He then continued to give his side of the story about what had happened.

Appellant was in custody, handcuffed, and wearing a jail jumpsuit. One of the officers told appellant that a goal for when appellant left that day was to have appellant's questions answered. At a later point in the interview, the officers asked appellant if they could look at his car, and he asked them why they needed to do that when he was already in custody. And at the end of the interview, he discussed with the officers what his bond amount was and whether and when he could have it reduced.

## C. Evidence of Awareness

At the beginning of the interview, the officer who Mirandized appellant alluded to his past history, and appellant later told the officers about his experience in the criminal justice system. When the officer read appellant his rights at the beginning of the interview and asked whether he understood them, appellant nodded up and down and said yes. When one of the officers told appellant that the law allowed them to lie to him, appellant disagreed and responded that if they did so, it would violate his rights.

After telling the officers he is schizophrenic, appellant told them he was taking Haldol every day and that it helps him. Appellant told the officers that he

had been in and out of jail when he was not taking his medication. Appellant used the interview as an opportunity to put forward his claim that the deceased had instigated the confrontation and attacked him. Throughout the interview, appellant appears lucid and appropriately responsive to the officers' questions.

## D. Application

Based on the totality of the circumstances, we conclude that the trial court did not err by determining that the State had met its burden to show that appellant's decision to talk to the police was uncoerced and based on the requisite level of comprehension. *See Moran*, 475 U.S. at 421, 106 S. Ct. at 1141; *Joseph*, 309 S.W.3d at 24. Therefore, we overrule appellant's fourth point.

## Conclusion

Because we have overruled all of appellant's points, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL: GABRIEL, PITTMAN, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 12, 2018

17