**Affirmed and Opinion filed June 11, 2013.**



In The

# Fourteenth Court of Appeals

---

**NOS. 14-12-00210-CR, 14-12-00211-CR, 14-12-00212-CR, 14-12-00213-CR, 14-12-00214-CR, 14-12-00215-CR, 14-12-00216-CR, 14-12-00217-CR, 14-12-00218-CR, 14-12-00219-CR, 14-12-00220-CR, 14-12-00221-CR, 14-12-00222-CR, 14-12-00223-CR, 14-12-00224-CR, 14-12-00225-CR, 14-12-00226-CR, 14-12-00227-CR, 14-12-00228-CR, 14-12-00229-CR, 14-12-00230-CR, 14-12-00231-CR, 14-12-00232-CR, 14-12-00233-CR, 14-12-00234-CR, 14-12-00235-CR, 14-12-00236-CR, 14-12-00237-CR, 14-12-00238-CR**

---

**AL D. CHECO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**

---

**Trial Court Cause Nos. 1264075, 1264076, 1317556, 1317557, 1317558, 1317559, 1317560, 1317562, 1317563, 1317565, 1317566, 1317568, 1317569, 1317571, 1317573, 1317574, 1317575, 1317576, 1317577, 1317578, 1317579, 1317580, 1317581, 1317582, 1317583, 1317584, 1317585, 1317586, 1317588**

# OPINION

Appellant Al D. Checo appeals from his convictions for attempted aggravated sexual assault of a child, aggravated kidnapping, and twenty-seven counts of possession of child pornography. A jury found appellant guilty and assessed his punishment at 19 years in prison for the attempted aggravated sexual assault, 20 years for the aggravated kidnapping, and 10 years for each possession of child pornography charge. In sentencing appellant in accordance with the jury verdict, the trial court ordered the child pornography sentences to run concurrently.

In his first six issues, appellant challenges the admission into evidence of six different pieces of evidence. In his seventh issue, appellant contends that the search warrants issued in this case were impermissibly broad and thus violated the Fourth Amendment of the United States Constitution. And in his eighth issue, appellant contends that probable cause did not exist to support the issuance of the search warrants. We affirm.

## I. Background

M.C. testified that on May 21, 2010, she was seven years old. As M.C. was walking home from school that day, appellant, who was outside his green pickup truck near a bike lane, told M.C. that her mother had directed him to "pick [M.C.] up." He was holding his phone to his ear as though he were talking to M.C.'s mother. M.C. had never seen appellant before, but she believed him and got into his pickup truck when he told her to do so. Appellant drove M.C. to his townhouse and took her inside. M.C. described the interior of the townhouse as "a mess." Appellant took her upstairs, showed her a bedroom, which had a cartoonish picture of the sea on the walls, and asked her if she liked it. She replied that she did. She noticed brown stains on the bed in this room and that the bed was lying flat on the

2

floor instead of on a bed frame. She also observed a laptop computer in the room that was set up to take photos and video.

Appellant took M.C. back downstairs where he showed her pornographic videos on a desktop computer. Appellant then led M.C. back upstairs and told her to sit on the bed. She did so and he asked her whether she knew how to kiss and how to suck on a lollipop. M.C. replied "no" because she thought "he was going to do something." She then began to cry because she thought appellant was going to tell her to put her mouth on his private part. Appellant meanwhile had pulled his pants down almost to his knees, revealing his boxer shorts. When M.C. began to cry, appellant told her that he did not mean to scare her and pulled up his pants. They then went back downstairs and got in appellant's pickup truck, and he drove her to a corner and dropped her off, telling her not to tell anyone what happened but to just tell her mom that she thought she was supposed to go with her friends after school.

After M.C. returned to her family, the police took her to see if she could identify the person who abducted her. M.C. testified that she was able to identify appellant at that time as the person who abducted her, and she identified him again in the courtroom. M.C. also was able to identify appellant's townhouse and green pickup truck.

Based on information obtained from M.C., the police obtained search warrants authorizing them to search appellant's person, residence, truck, and a laptop found in the truck for child pornography among other items. During the course of the search, numerous items were seized, including computers and related media storage. Other items seized and ultimately admitted into evidence at trial included sexually explicit web-cam videos, sexually explicit MiniDisc videos, sexually explicit internet chat logs, a pump device, lubricants, and two news tracts

3

by Tony Alamo, a convicted child molester.[1]

Russell Sparks, a United States Secret Service agent and computer examiner specializing in internet computer crimes, testified that he performed forensic examinations of the computers and related media storage devices found at appellant's residence. According to Sparks, these devices contained over 300 images, most of which he classified as child pornography. Sparks further testified that appellant was the likely owner of the images and that they were not recorded on the devices by mistake or by another person.

Appellant testified on his own behalf, essentially admitting that he abducted M.C., but insisting that two masked gunmen forced him to do so. He further alleged that M.C. lied when she said that he showed her pornography or pulled down his pants in her presence. Lastly, he stated that only the computer found in his truck belonged to him and denied possessing any child pornography or knowing to whom the other computer equipment belonged.

Appellant also presented the testimony of his sister, who stated that appellant had moved into the townhouse with her after their mother died and stayed in the residence after the sister and her family moved out. She stated that she had painted a sea mural in an upstairs bedroom and left a computer there. She confirmed that appellant had the ability to use computers and webcams.

## II. Motion to Suppress

In his seventh issue, appellant contends that the two search warrants issued in this case were so broad as to constitute general warrants in violation of the Fourth Amendment to the United States Constitution. In his eighth issue, appellant

---

[1] The search warrants, and the officer's affidavit used to obtain them, are the subject of two of appellant's issues on appeal. The specific pieces of evidence listed are the subject of appellant's first six issues. They all will be discussed in more detail below.

contends the officer's affidavits used to obtain the warrants did not demonstrate probable cause supporting the warrants' issuance, also in violation of the Fourth Amendment. On these bases, appellant contends the trial court erred in denying his motion to suppress evidence recovered pursuant to the warrants. *See, e.g., Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that evidence obtained in violation of the Fourth Amendment generally should be excluded from evidence).

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). We give almost total deference to the trial court's determination of historical facts that depend on credibility and review de novo the trial court's application of the law to those facts. *Id*. We also review de novo the trial court's application of the law of search and seizure. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). However, appellate review of an affidavit in support of a search warrant is not de novo; rather, great deference is given to the magistrate's determination of probable cause. *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 236–37 (1983)).

## A. Particularity

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and ***particularly describing the place to be searched, and the persons or things to be seized***." U.S. Const. amend. IV (emphasis added). The particularity requirement forecloses the opportunity for a general search and "prevents the seizure of one thing under a warrant describing another" by restricting the discretion of the executing officer. *Marron v. U.S.*, 275 U.S. 192, 196 (1927); *see also State v. Powell*, 306 S.W.3d 761, 765-66 & n.9 (Tex. Crim. App. 2010) (discussing *Marron*). A general order to explore and

5

rummage through a person's belongings is not permitted. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized. *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981). The degree of specificity required is somewhat flexible, depending on the type of crime involved and the kinds of items sought. *See Porath v. State*, 148 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *United States v. Layne*, 43 F.3d 127, 132 (5th Cir.), *cert. denied*, 514 U.S. 1077 (1995)); *see also* George E. Dix & John M. Schmolesky, 40 Texas Practice: Criminal Practice and Procedure § 9:53 (3rd ed. 2012) (discussing required precision in various contexts).

Overly broad language in a warrant, however, does not necessarily render the entire resulting search and seizure improper. Instead, the remedy for an overly broad warrant is to sever the overly broad portions from those that are sufficiently particular; the search and seizure of items listed under the valid portions is lawful; only seized items not covered by the particularized portions should be excluded from evidence on that basis. *See Ramos v. State*, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996); *Walthall v. State*, 594 S.W.2d 74, 79 (Tex. Crim. App. 1980); *Romo v. State*, 315 S.W.3d 565, 571-72 (Tex. App.—Fort Worth 2010, pet. ref'd).

The two search warrants in this case—one for appellant's townhouse and person and one for his truck and a laptop computer discovered in plain view inside the truck—are largely identical in their authorizations. Each warrant incorporates the officer's respective affidavits as if set out therein and commands the executing officer to enter the described location "with the authority to search for and to seize any and all items that may be found there in [sic] including but not limited to . . . ." Each warrant then contains a list of 14 (townhouse and person) or 15 (truck and computer) categories of items that could be searched for and seized. Each warrant

6

also orders a forensic examination of any seized devices.

### 1. Overbroad Introductory Language

Appellant primarily complains that the general introductory language to the categories of items—"to search for and to seize any and all items that may be found there . . . including but not limited to"—is overly broad. This language is unquestionably broad. *Cf. Ramos*, 934 S.W.2d at 363 (assuming without deciding that "any and all evidence" phrase in affidavit incorporated into warrant was impermissibly broad). However, as explained above, even when a warrant contains impermissibly broad language, only seized items not covered by the particularized portions of the warrant should be excluded from evidence on that basis. *See Ramos*, 934 S.W.2d at 363; *Walthall*, 594 S.W.2d at 79; *Romo*, 315 S.W.3d at 571-72. In this case, severing out the general language "any and all items" and "including but not limited to" from each warrant leaves the specific categories listed in each. *See Andresen*, 427 U.S. at 481 (noting general language in warrant was part of the same sentence as the specific language); *United States v. Bithoney*, 631 F.2d 1, 2 & n.1 (1st Cir. 1980) (holding warrant was adequately specific because "[i]t undertook to narrow and identify the documents subject to seizure, breaking them down into specific categories" and construing more general language so as not to defeat the particularity of the warrant as a whole).

In both the *Walthall* and *Ramos* cases, the Court of Criminal Appeals cautioned that warrants essentially general in nature—except for minor items that meet the requirement of particularity—may not be severable into valid and invalid portions. *Walthall*, 594 S.W.2d at 79; *Ramos*, 934 S.W.2d at 363 n.7. The Court did not explain in either case exactly when a warrant would be considered

essentially general in nature. *See* Dix & Schmolesky, *supra*, § 9:17.[2] However, the list of items in the warrants here cannot be described as "minor items." Reading the warrants here as authorizing a general search and not one bounded by the particularly described items would be an overly technical reading. The warrants contained sufficiently detailed descriptions of the items to be searched for despite some broad introductory language.[3]

## 2. Specific Categories

Appellant additionally claims that certain of the expressly listed categories of items were described in too-general terms, including the authorizations to search for and seize: (1) "[a]ny data, information, or evidence of sexual assault of a child" (contained only in the warrant for appellant's truck); (2) "any data referring to online contacts or correspondences with the subjects under the age of 18 or related to the subject of communicating with children"; (3) computers, "devices that can be used to store or transport any type of computer media," cameras and video equipment, and cellular telephones; and (4) the personal writings of the accused. Appellant, however, only complained about one of these categories in the trial court: the one regarding his personal writings. *See* Tex. R. App. P. 33.1(a)

---

[2] Professors Dix and Schmolesky state that in light of *Walthall*, "it is difficult to imagine what ineffective provisions would" render a warrant essentially general in nature that listed specific items to be sought in a search. Dix & Schmolesky, *supra*, § 9:17. They suggest, however, that "the test ought to be whether, with the invalid provisions considered, the warrant on its face purported to authorize the sort of general, unlimited search constituting the core of constitutional concern." *Id.* Neither the professors nor appellant cite any cases employing a test that expansive.

[3] It should also be noted that the warrants here specifically incorporated the warrant affidavits, which sought authority to search for essentially the same specific categories of items then listed in the warrants themselves. Appellant mentions in a footnote four seized items that were arguably outside any of the specific, listed categories: baby wipes, a book entitled "How to Be an Effective Teacher," blue and white ropes attached to a workout machine, and two Tony Alamo tracts. Appellant does not, however, make any specific argument for the exclusion of these items beyond his contention discussed in the text above that the search warrants were too broad.

(providing that as a prerequisite to presenting a complaint on appeal, the record must show that the complaint was made to the trial court by timely request, objection, or motion); *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (holding that making one complaint in trial court did not preserve related complaint for appellate review).

The reference to appellant's personal writings in the warrant was contained in the following category of items to be sought: "Telephone books, address books, diaries, or other writings tending to identify other child victims." Appellant contends that such language violated article 18.02(10) of the Code of Criminal Procedure and raised First Amendment (freedom of speech) concerns. *See* U.S. Const. amend. I; Tex. Code. Crim. Proc. art. 18.02(10).[4] Appellant, however, does not identify any such writings as having been improperly admitted in this case. *See, e.g., Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996) (overruling point of error on appeal because appellant failed to identify specific evidence seized pursuant to the allegedly offending portions of search warrant). Accordingly, appellant has not shown that the trial court erred in denying his motion to suppress on this basis.

Having found no merit in any of appellant's arguments regarding the breadth of the two search warrants in this case, we overrule his seventh issue.

## B. Probable Cause

In his eighth issue, appellant contends that the officer's affidavits did not

---

[4] Article 18.02 states in relevant part: "A search warrant may be issued to search for and seize . . . (10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." Tex. Code Crim. Proc. art. 18.02(10).

provide probable cause to support a search for child pornography at the subject locations. Probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. *Bonds v. State*, No. PD-0039-12, 2013 WL 1136522, at \*4 (Tex. Crim. App. Mar. 20, 2013). It is a flexible and nondemanding standard. *Id*. Our review of the magistrate's decision to issue a search warrant is limited to the four corners of the affidavit. *Id*. We review that decision under a highly deferential standard of review, pursuant to the constitutional preference for warrant-based searches. *Id*. We will uphold the magistrate's probable-cause determination so long as the affidavit reveals a substantial basis for concluding that probable cause existed. *Id*. The magistrate should interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners. *Id*. In turn, we should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner; when in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id*.

Officer John Colburn of the Houston Police Department provided the affidavits in support of issuing the search warrants in this case. In the affidavits, Colburn described the subject locations (appellant's person and townhouse for one and appellant's truck and a laptop computer in the other). Colburn further described his interaction with other investigating officers as well as with M.C., the complainant for the kidnapping and sexual assault allegations. Colburn found M.C. to be credible, and he recounted how M.C. told him that appellant lured her into his truck, took her to his townhouse, asked her if she knew how to kiss, and then showed her "nude images of men and women on the internet using a computer in the living room." Appellant then took her upstairs and pulled down his pants.

10

Colburn also learned from M.C.'s mother that there was a male with a green truck in the neighborhood who was "known to pick[ ]up young girls in the same area and cut their hair, taking it as a form of a souvenir."

Colburn additionally set forth his experience as a law enforcement officer, emphasizing his training and experience in the investigation of the exploitation of children, including specialized training in sex offender characteristics. He specifically noted interviews with over 20 sexual offenders against children as well as conversations with other, more experienced officers in the field concerning the "methods and means" utilized by such offenders.

According to Colburn, based on his training and experience, there is a "propensity" for sexual offenders to become "dual offender[s]," meaning they will not only directly engage "minors in a sexually explicit manner" but will also "collect or possess such images of a sexual nature [apparently meaning child pornography]." He discussed the likelihood that a person who has "a sexual preference in children" will correspond with potential victims over the internet. Colburn further presented at some length characteristics common to people who are sexually attracted to children, including the collection of sexually explicit materials (photographs, videotapes, etc.) depicting children, the use of sexually explicit materials to lower victims' inhibitions, and the retention of such materials for various purposes. He also explained that such individuals often correspond with like-minded people and compile information about such other people as well as victims and potential victims. Colburn emphasized that, based on his training and experience and the information he received regarding appellant's conduct, he believed appellant had committed aggravated kidnapping and attempted aggravated sexual assault and was someone with a sexual interest in children to whom the listed characteristics would apply.

11

He further provided certain detailed information regarding how computer storage and the internet operate and the likelihood that valuable information and evidence could be gathered from appellant's computers and storage devices. Lastly, Colburn requested that search warrants be issued for the subject locations, permitting the seizure of the same lists of items that were ultimately included in the warrants themselves.

Appellant contends that Colburn's affidavits failed to provide probable cause to support the search for and seizure of child pornography. He argues that in the absence of any suggestion in the affidavits that he photographed or videotaped M.C. or other information independently linking him to child pornography, the mere fact he abducted M.C. and showed her adult pornography was insufficient to provide probable cause regarding possession of child pornography.[5] However, Colburn draws clear links in his affidavits, based on his experience, training, and discussions with other experienced investigators, between appellant's alleged actions and the likelihood he possessed child pornography. Of particular note, the facts as presented by Colburn established not only that appellant possessed sexual proclivities toward children but also that he had an interest in and ready access to pornography, based on the fact he showed pornography to M.C. while she was in his townhouse. The magistrate was within his discretion in relying on Colburn's expertise given the facts presented. *See, e.g., Steele v. State*, 355 S.W.3d 746, 751-52 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (relying on similar expert statements in officer's affidavit in holding probable cause existed for issuance of

---

[5] It cannot be said with certainty that the images appellant showed M.C. were adult rather than child pornography. Colburn reported in his affidavits that M.C. said appellant showed her "nude images of men and women," so the most likely implication is that only adults appeared in the images.

warrant).[6]

Applying a high degree of deference to the magistrate's determination, we find that Colburn's affidavits presented a substantial basis for concluding that probable cause existed. *See Bonds*, 2013 WL 1136522, at *4. We overrule appellant's eighth issue.

### III. Evidentiary Issues

In issues one through six, appellant challenges the admission of certain pieces of evidence, respectively: (1) sexually explicit webcam videos involving appellant, (2) sexually explicit videos involving appellant contained on MiniDiscs, (3) instant messenger chat logs, (4) a "penis pump" and photographs thereof, (5) photographs of various lubricants, and (6) two Tony Alamo news tracts. We review a trial court's decision to admit or exclude evidence for an abuse of

---

[6] Appellant additionally states that in only 12 percent of sexual abuse cases was child pornography also discovered to have been possessed by the perpetrator, citing Janis Wolak, et. al, *Child Pornography Possessors: Trends in Offender and Case Characteristics*, 23 Sexual Abuse: A Journal of Research and Treatment 22, 33 (2011). Beyond failing to state any basis on which we could consider the cited article in a probable cause analysis, appellant seems to have misread the article. The authors actually appear to find a strong correlation in the cases they studied between attempted or completed child sexual abuse and possession of child pornography. *Id*. at 33-34.

Appellant further insists that the pertinent facts of the present case are indistinguishable from those of an unreported and, therefore, nonprecedential opinion from the Austin Court of Appeals, *Theis v. State*, No. 03-04-00614-CR, 2005 WL 3076935 (Tex. App.—Austin Nov. 17, 2005, no pet.) (mem. op., not designated for publication). *See Johnson v. State*, 352 S.W.3d 224, 228 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (noting unreported criminal cases have no precedential value). In *Theis*, the court determined that an officer's affidavit did not provide probable cause for a search warrant for child pornography because the officer provided insufficient information regarding his own background to establish himself as an expert and there was nothing in the affidavit linking the defendant to the described "characteristics of . . . individuals likely to exploit children." 2005 WL 3076935, at *4-5. Those problems, however, are not an issue with Colburn's affidavits; Colburn both provided details regarding his own training and experience and explicitly linked appellant to the classes of person that he describes in the affidavits. Accordingly, we do not find the reasoning in *Theis* applicable in the present case.

discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). As long as the court's ruling is within the zone of reasonable disagreement, we will not disturb the ruling. *Id*.

Appellant specifically contends that each of these pieces of evidence should have been excluded under Texas Rules of Evidence 402 and 403. Rule 402 provides that "[e]vidence which is not relevant is inadmissible." Tex. R. Evid. 402. Under Rule 403, even relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id*. 403.

## A. Issue Five

We begin by noting that appellant did not preserve his complaints regarding the lubricants discovered in his townhouse. Although appellant objected on Rule 402 and 403 grounds when photographs of the items were offered, he did not offer any such objection when the lubricants themselves were discussed or offered into evidence.[7] *See* Tex. R. App. P. 33.1(a) (requiring as a prerequisite for presenting a complaint on appeal that the complaint have been made to the trial court by timely request, objection, or motion); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained of ruling."); *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Accordingly, we overrule appellant's fifth issue.

---

[7] Appellant's counsel did state that he renewed his prior objections when the lubricants themselves were offered, but this language was used repeatedly in the trial to refer back to the motion to suppress contentions discussed in regards to appellate issues seven and eight. Appellant's counsel did not raise objections to the lubricants under Rules 402 and 403.

## B. Rule 402

At trial, appellant objected to admission of the items covered in issues one, two, four, and six (Webcam videos, MiniDisc videos, pump, and Alamo tracts) under Rule 402, which provides that irrelevant evidence is inadmissible. Tex. Rule Evid. 402.[8] Rule 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion. *King v. State*, 17 S.W.3d 7, 20 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The definition of relevant evidence in the rules is an expansive one. *Id.*

In his briefing, appellant does not make any specific argument under Rule 402 that the items in question were not relevant. *See* Tex. R. App. P. 38.1(i) (mandating that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Long v. State*, 823 S.W.2d 259, 271 n.17 (Tex. Crim. App. 1991) (dispensing with consideration of trial court objection based on Rule 402 where appellant only argued under Rule 403 in appellate briefing).

Moreover, it is within the zone of reasonable disagreement as to whether each of the pieces of evidence objected to possesses some relevance to matters of consequence in this case. Appellant denied that he had any connection to the child pornography found within his townhouse or that he had shown pornography to M.C. Each of these items of evidence arguably serves to tie appellant to the

---

[8] Appellant did not object to the internet chat logs, covered in issue three, on the basis of Rule 402.

15

computer equipment in question as well as to the child pornography thereon.[9] Accordingly, we overrule issues one, two, four, and six to the extent they are based on Rule 402.

### C. Rule 403

Appellant's counsel objected to the webcam videos, MiniDisc videos, chat logs, pump, and Alamo tracts (issues one through four and six) on the basis of Rule 403. However, for three of these items or sets of items—the webcam videos, pump, and Alamo tracts—counsel stated only generally that he objected under Rule 403, without stating any more specific basis for the objection. A general "403" objection such as this is not sufficient to preserve error because it fails to identify for the trial court which of the five distinct grounds for excluding evidence listed in the rule is being argued as a basis for exclusion. *Williams v. State*, 930 S.W.2d 898, 901 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *accord Phelps v. State*, 999 S.W.2d 512, 520 (Tex. App.—Eastland 1999, pet. ref'd). Consequently, we overrule appellant's issues one, four, and six.

That leaves only issues two and three, concerning respectively the MiniDisc videos and internet chat logs, as preserved for appellate review. We presume that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). It is therefore the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Wenger v. State*, 292 S.W.3d 191, 204 (Tex. App.—Fort

---

[9] The MiniDisc and webcam videos show appellant's use of the computer equipment for sexually explicit purposes, the pump (found near the upstairs computer) could be seen as an indication appellant used the computer to view pornography, and the Alamo tracts discuss issues related to the sexual exploitation of children.

Worth 2009, no pet.); *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In reviewing the trial court's balancing test determination, we are to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). The Court of Criminal Appeals has identified four nonexclusive factors to be considered in conducting the Rule 403 balancing test: (1) the probative value of the evidence; (2) the potential for the evidence to impress the jury in some irrational but indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for that evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) (citing *Montgomery*, 810 S.W.2d at 389-90).

Turning first to the MiniDisc videos, the sexually explicit part of the videos was shown to the jury once during Officer Colburn's testimony.[10] When appellant objected to the videos' admission, the State argued that the videos helped establish appellant's dominion and control over the computer equipment, as the MiniDiscs were found with the actual child pornography videos, which were on other disks. The State further suggested that the videos helped prove appellant's intent to sexually assault M.C. as it showed what he did with the camera equipment found in the room where he dropped his pants in front of M.C.[11] Therefore, the trial court had a reasonable basis for concluding that the videos had probative value, the time needed to develop the evidence was slight, and the State indeed had a need for that evidence.

---

[10] There is a suggestion in other parts of the record that sexually explicit videos were played for the jury in fast-forward mode. However, it cannot be ascertained with certainty whether these particular MiniDisc videos were displayed in this fashion. Officer Colburn's narrative testimony regarding the sexually explicit portions of the videos runs less than three pages of the reporter's record and is intermixed with statements not related to sexual activity, such as appellant's adjusting the camera and descriptions of the room in which the activity occurred.

[11] Testimony of Officer Colburn subsequently supported these assertions.

Appellant complains that the videos portray him in a negative light as someone who not only filmed himself having sexual relations but may have also done so without the other participant's knowledge. However, given the probative value of the videos and the minimal time needed to present them, the trial court's decision to admit them was within the zone of reasonable disagreement. *See Tienda*, 358 S.W.3d at 638. Accordingly, we will not disturb the court's determination on appeal. We overrule appellant's second issue.

The internet chat logs that appellant complains about were discussed during the testimony of Russell Sparks, the computer examiner. It does not appear that a print-out of the chat logs was offered or introduced into evidence, and it is unclear from Sparks' testimony exactly what exhibit, if any , was being referenced when he discussed the chat logs.[12] At one point in the testimony when the prosecutor asked about a particular entry or line in the chat logs, appellant's counsel objected that the entry was more prejudicial than probative because the language was sexually explicit and it was not established that the exchange was with a minor. The State responded that the logs established that the computer on which they appeared was in fact appellant's computer—an analysis Sparks performed by tracing usernames and passwords to appellant—and that appellant used the computer (on which child pornography was also stored and accessed) for sexual gratification. After the judge overruled the objection, the prosecutor asked Sparks what a particular entry stated, and Sparks replied with a sexually explicit statement of four words. The prosecutor then asked about another entry further down the screen, which apparently read, "you dislike pervs, baby?" Appellant's counsel did

---

[12] Several DVDs and computer hard drives were admitted into evidence, and Sparks testified generally and specifically regarding their contents. At the relevant point in Sparks' testimony, the prosecutor was apparently showing him information on a monitor, but it is not clear what exhibit, if any, contained the information.

not object further regarding the chat logs.

The chat logs indeed appear to have probative value, the entire exchange between the prosecutor and Sparks constituted no more than ten lines of testimony in the reporters' record, and there appears to have been a need for the evidence to establish appellant's control over and use of the computer equipment, which also contained pornographic images of children for which he was being prosecuted. Although there is some risk of undue prejudice to appellant in the admission of the evidence, the trial court's decision to admit the chat log entries was within the zone of reasonable disagreement. *See Tienda*, 358 S.W.3d at 638. Accordingly, we overrule appellant's third issue.

## IV. Conclusion

Having overruled each of appellant's eight appellate issues, we affirm the trial court's judgment.

/s/        Martha Hill Jamison
                     Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Publish — TEX. R. APP. P. 47.2(b).