

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TREVOR YARDLEY WATSON, | § | |
| | | No. 08-19-00026-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 372nd District Court |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1557330R) |
| | § | |

## **O P I N I O N**

A jury convicted Watson of one count of continuous sexual abuse of a child under 14 years of age and acquitted him of one count of indecency with a child by contact. The trial court assessed Watson's punishment at 40-years' confinement. In a single point of error, Watson contends in three consolidated arguments that the trial court erred by admitting, in the guilt phase of his trial, extraneous offenses of indecency with a separate child and extraneous-offense evidence that he was "smoking some weed" during one of the instances forming the basis of the charged offenses. Finding no harmful error, we affirm.[1]

---

[1] This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We follow the precedents from that Court where they might conflict with our own. TEX. R. APP. P. 41.3.

# I. BACKGROUND

Kate, Kelsey, and Kylie are sisters. As to charges filed against Watson, Kate and Kelsey are complaining witnesses while Kylie testified as an extraneous offense witness.[2] Along with their mother Kimberly, the girls lived down the street from their aunt who lived with her husband, Watson. Thus, Kimberly would often take the three sisters over to Watson's home. At times, Kate and Kelsey, the victims of the continuous-sexual-abuse count, would stay at Watson's home for the weekend or for an entire week, depending on their school schedules. However, these visits stopped in July 2016 when Kate and Kelsey made outcries to Kimberly about Watson's abusive conduct.

Watson began sexually abusing Kate when she was 11-years' old, and the abuse continued for two years. During these incidents, Watson would put his fingers in Kate's vagina, put his mouth on her vagina, and have sexual intercourse with her. In addition, Kate also testified – in an indirect response to an open-ended question by the prosecutor – that Watson had been "smoking some weed" during one of the times he sexually abused her. Watson also began sexually abusing Kelsey when she was nine-years' old, and this abuse similarly occurred throughout a two-year period. Throughout this period, Watson's abuse of Kelsey occurred over ten times, and during these incidents, Watson would put his fingers in Kelsey's vagina.

Although not named as a victim of the charged offenses for which Watson was tried, Kylie also suffered sexual abuse at the hands of Watson beginning when she was about 12- or 13-years' old, and she testified in the guilt-phase of trial as an extraneous-offense witness. During these

---

[2] To protect the identity of the victims who were minors at the time the offenses against them were committed, this opinion will refer to them and their family members by fictitious names. *See* TEX. R. APP. P. 9.10(a)(3), (b), (d).

extraneous incidents, Watson touched Kylie on her "butt, breast and private part." Watson did this during occasions when he and Kylie were playing touch-based games, such as hide-and-go-seek or wrestling, or when Kylie was sleeping.

## II. ISSUES ON APPEAL

In one point of error on appeal, Watson raises three separate arguments relating to the admissibility of extraneous-offense evidence in the guilt phase of his trial. In his first sub-point, he argues that the trial court abused its discretion by admitting Kylie's testimony about his acts of indecency with a child committed against her because Kylie's testimony did not establish all the elements of indecency with a child as required for admissibility of those acts under Texas Code of Criminal Procedure article 38.37, section 2-a(1). In his second sub-point, Watson argues that the trial court abused its discretion by admitting Kylie's testimony about those same extraneous acts because they were inadmissible under Rule 403. In his third sub-point, Watson argues that Kate's testimony about him "smoking some weed" was inadmissible as extraneous-offense evidence because it was irrelevant and, even assuming it had probative value, any probative value it had was substantially outweighed by the danger of unfair prejudice under Rule 403.

In response, the State contends that: (1) Kylie's testimony about Watson's extraneous indecency-with-a-child offenses was admissible under article 38.37, section 2-a(1) because her testimony provided sufficient proof on each element of the offenses in order for a jury to find that Watson committed the offenses; (2) Watson did not preserve his Rule 403 complaint relating to Kylie's extraneous-offense testimony; and (3) even assuming admission of Watson's marihuana use was error, any error in its admission was harmless.

## III. DISCUSSION

### A. Sub-Point 1: Whether the Trial Court Erred by Admitting the Indecency-with-a-Child Extraneous Offenses under Texas Code of Criminal Procedure Article 38.37 Section 2-a(1)

#### 1. *Underlying Facts*

After both Kate and Kelsey testified, the State offered testimony from Kylie about extraneous offenses committed by Watson against her. Outside the jury's presence, the trial court then held a hearing to determine whether Kylie's testimony would be admissible under article 38.37 of the Code of Criminal Procedure. In this hearing, Kylie testified that Watson, at various times, had touched her "boobs," "butt[,]" and "private part" multiple times. Kylie described that sometimes, while she slept, Watson would wake her up by touching her. When she slept on her stomach, Watson touched her butt, and when she slept on her back, Watson touched her breasts. As Kylie would awaken during these instances, she would begin to move, and Watson – who would be the only other person in the room each time – would say he lost something and act as though he was looking for something.

At other times, Watson inappropriately touched Kylie while they were playing touch-based games, such as hide-and-go-seek and wrestling. Kylie testified that Watson's inappropriate touches did not occur during the normal course of playing the games. Kylie knew such touching was not normal because it happened multiple times and always involved a "grab" by Watson. Kylie testified that Watson's sexual touching began when she was about 12- or 13-years' old and that the abuse continued for a couple of years. Kylie estimated that Watson touched her between five to ten times during this period. On cross-examination, Kylie acknowledged that she, of course, is not aware of her surroundings while she sleeps. She also acknowledged that Watson's

4

inappropriate touching while they were playing games could have been inadvertent.

### 2. *Standard of Review*

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "The trial court abuses its discretion when [its] decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

### 3. *Applicable Law*

Generally, the State may not use extraneous offenses against an accused in a criminal trial, but exceptions exist. *See Daggett v. State*, 187 S.W.3d 444, 450-51 (Tex. Crim. App. 2005). For example, when the Legislature enacted article 38.37, section 2, it carved out an exception to the general rule prohibiting extraneous-offense evidence and made evidence of propensity and character admissible in specific types of cases. *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App. – Houston [14th Dist.] 2015, pet. ref'd).

Article 38.37, section 2(b), applies to criminal prosecutions of certain offenses under the Penal Code, including the offenses of continuous sexual abuse of a child or children and indecency with a child, at issue here, and provides that, notwithstanding evidentiary Rules 404 and 405, the trial court may admit evidence that a defendant had committed a separate identified sexual offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B)(C), (b). But before a trial court admits such evidence, the court must "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt" and

5

"conduct a hearing out of the presence of the jury for that purpose." *Id*. § 2-a(1), (2).

As relevant to the extraneous offenses at issue here, a person commits the offense of indecency with a child if he touches the anus, breast, or any part of the genitals of a child younger than 17 years of age with the intent to arouse of gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all surrounding circumstances. *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App. – Fort Worth 2010, pet. ref'd). Additionally, a complainant's testimony alone is sufficient to support a conviction for indecency with a child. *Id*.

*4. Application*

Here, Kylie's testimony provided at least some evidence on all the elements of an offense of indecency with a child: while she was about 12- or 13-years' old, Watson touched her "boobs" and "private part," in a manner that she believed was inappropriate. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1). Her testimony alone would have been sufficient to support a conviction for such conduct if it had been charged against Watson as an offense. *See Bazanes*, 310 S.W.3d at 40.

Nonetheless, Watson argues that Kylie's concessions on cross-examination made her testimony insufficient to support a finding by the jury that he committed any offenses against her. Regarding the touching while Kylie slept, Watson argues that Kylie's testimony established only that, while asleep, she felt someone touching her and that his mere presence in her room when she awoke is insufficient to prove that he committed any indecent act with her. And regarding the touching while playing games, Watson argues that Kylie's testimony established only that some of the allegedly improper acts occurred during innocent, touch-based games such as hide-and-go-seek or wrestling and that the possibility of his touching having been consistent with innocent

6

activity thereby "would negate" the element of intent to arouse or gratify his sexual desire. We reject Watson's arguments here. First, these arguments bear on the weight of Kylie's testimony at trial, rather than the legal sufficiency of her testimony, and the jury was free to disregard Kylie's acknowledgements on cross-examination and to look instead at the remainder of legally sufficient evidence proving the extraneous offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . ."). Second, during the instances where Watson touched Kylie while she slept, Kylie testified that she would awake to Watson being the only other person in the room and acting as though he lost something and was searching for it. She also testified that Watson had been touching her repeatedly during this period of time. This evidence was sufficient to circumstantially prove that Watson had been touching Kylie while she slept and until she woke. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) ("[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence."); *see also Stafford v. State*, No. 02-02-00477-CR, 2003 WL 22923034, at *2 (Tex. App. – Fort Worth Dec. 11, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that the jury could have inferred the defendant had the intent to arouse or gratify his sexual desire when he touched the victim's genitals based on the evidence that he entered the victim's room when she was asleep, was caught rubbing her vagina and stomach, and told varying accounts regarding why he entered her room). Finally, during the instances where Watson touched Kylie while playing games, Kylie testified that Watson's touching did not occur during the normal course of the games because it happened multiple times and always involved a "grab." This evidence was sufficient for a jury to infer that Watson engaged in such conduct with

the necessary intent to arouse or gratify his sexual desire. *See Bazanes*, 310 S.W.3d at 40 (observing that the specific intent required for the offense of indecency with a child may be inferred from all the surrounding circumstances).

Thus, Kylie's testimony alone was adequate to support a finding by the jury that Watson committed the separate indecency-with-a-child extraneous offenses against her, and the requirement of Texas Code of Criminal Procedure article 38.37, section 2-a(1) was satisfied. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1). The trial court therefore did not err in admitting Kylie's testimony about Watson's extraneous offenses.

Consequently, we overrule Watson's first sub-point in this appeal.

### B. Sub-Point 2: Whether the Trial Court Erred by Admitting the Indecency-with-a Child Extraneous Offenses under Rule 403

*1. Underlying Facts*

During a hearing outside the jury's presence to determine the admissibility of Kylie's extraneous-offense testimony, Watson did not make any objection based on Rule 403. Nonetheless, the trial court appeared to believe one had been made but, understandably, did not identify the specific type of Rule 403 objection believed to have been made, and the trial court granted a running objection on the presumed, bare "403" objection:

| | |
|---|---|
| Trial court: | And just so the record is clear, Defense had the 38.37, Section 2(a), insufficient as a matter of law objection and a 403 objection. In the event that the 38.37 objection wasn't preserved, I've overruled both of those and they're both running for any testimony elicited from this witness. |
| Defense counsel: | You did say the 403, as well? |
| Trial court: | Yes, that was the second part. |
| Defense counsel: | Okay. |

| | |
|---|---|
| Trial court: | You kind of mumbled that early on, but I added that to make it clear for the record. I wasn't sure when I said do you want a running objection the record was clear – |
| Defense counsel: | Yes. |
| Trial court: | -- it's actually two running objections. |
| Defense counsel: | Yes, please. |
| Trial court: | No, it's covered. |

*2. Preservation-of-Error Rules*

Generally, to preserve error for review, a party's objection "must be specific enough so as to 'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez v. State*, 306 S.W.3d 308, 312-13 (Tex. Crim. App. 2009); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (as a prerequisite to presenting a complaint for appellate review, requiring that a party makes the complaint to the trial court by a timely objection that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context). And as the Second Court of Appeals has observed, time and again, "[a] general objection that evidence should not be admitted under Rule 403 is not sufficient to preserve error because it fails to identify for the trial court which of the five distinct grounds for excluding evidence listed in the rule is being argued as a basis for exclusion.[3]" *Page v. State*, No. 02-17-00019-CR, 2017 WL 4819404, at *3 (Tex. App.

---

[3] Texas Rule of Evidence 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly

– Fort Worth Oct. 26, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Checo v. State*, 402 S.W.3d 440, 451 (Tex. App. – Houston [14th Dist.] 2013, pet. ref'd)); *see also Lumsden v. State*, 564 S.W.3d 858, 898-99 (Tex. App. – Fort Worth 2018, pet. ref'd); *Mallory v. State*, No. 02-17-00279-CR, 2019 WL 618893, at *12 (Tex. App. – Fort Worth Feb. 14, 2019, pet. ref'd) (mem. op., not designated for publication) (cases holding the same).

### 3. Application

Although the record does not reflect that Watson made a Rule 403 objection to Kylie's testimony, the trial court nonetheless believed that an objection had been lodged and thereby granted Watson a running "403 objection." Yet, the record fails to show a distinct basis for such an objection, and thus, it was overruled as a general-Rule 403 objection. Because this general objection was not specific, it failed to identify which of the five distinct grounds listed in the rule served as the basis for exclusion and it failed to preserve error. *See, e.g.*, *Page*, 2017 WL 4819404, at *3, 4 n.4 (defendant's general Rule 403 objections to various exhibits not sufficiently specific to preserve error under any of the five distinct grounds for excluding evidence listed in the rule where "Appellant objected by stating, 'I make a 403 objection to 69, Your Honor'; '[s]eventy-four, objection under 403'; or a similar general objection."); *Mallory*, 2019 WL 618893, at *13 (defendant's general Rule 403 objection to various exhibits not sufficiently specific to preserve error where "[a]t trial, when the State offered these 29 exhibits, [the defendant] stated, 'Judge we would object to all of these under 403.'").

Thus, we hold that Watson's second sub-point was not preserved for our review and we overrule it.

---

presenting cumulative evidence. TEX. R. EVID 403.

**Sub-Point 3: Whether the Trial Court Erred by Admitting Evidence of**

**Watson's Marihuana Use under Rule 403**

*1. Underlying Facts*

As Kate testified in front of the jury about a specific instance where Watson sexually abused her, she mentioned that Watson had been "smoking some weed":

| Prosecutor: | Was there ever a time where [Watson] would just touch you? |
|---|---|
| Kate: | Yes. |
| Prosecutor: | Can you tell the jury about one of those times? |
| Kate: | I was home alone with [Watson] and he came upstairs and he was smoking some weed and – |

Watson interjected and objected on grounds that any testimony about possession of marihuana was inadmissible under article 38.37 and was more prejudicial than probative under Rule 403. The trial court overruled both objections. Aside from this single reference by Kate to Watson's use of marihuana, no other testimony was elicited at trial about the topic. Furthermore, the State did not mention it during opening statements or closing arguments.

*2. Harm Analysis for Non-constitutional Error*

Even assuming error exists in the trial court's evidentiary ruling, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. *See* TEX. R. APP. P. 44.2; *Perez v. State*, 562 S.W.3d 676, 691 (Tex. App. – Fort Worth 2018, pet. ref'd). Error in the admission of extraneous-offense evidence is non-constitutional error. *See Hernandez v. State*, 176 S.W.3d 821, 824-25 (Tex. Crim. App. 2005). We therefore apply Texas Rule of Appellate Procedure 44.2(b) and disregard the error if it did not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Perez*, 562 S.W.3d at 691. A substantial right is affected when the error had a

11

substantial and injurious effect or influence on determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Perez*, 562 S.W.3d at 691. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In making this determination, we review the record as a whole, which includes any testimony or physical evidence admitted for the jury's consideration, while giving due consideration to the nature of the evidence supporting the verdict and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355-56.

*3. Application*

In this case, there was a single mention of Watson's marihuana use – made when Kate indirectly responded to the prosecutor's open-ended question about an instance of sexual abuse. Aside from this instance, marihuana use was never mentioned again throughout the entire trial, neither in witness testimony or in the arguments of counsel, and the trial remained focused on the central issue at hand: whether Watson committed the charged sexual offenses. And while Watson attained an acquittal on one charged count, the more serious charged count of continuous sexual abuse of a child, on which the jury convicted him, was supported by more-than-ample evidence through the testimony of the three sisters about the multitude of acts of sexual abuse he committed on them.

Thus, we hold that admission of Watson's marihuana usage was harmless where it was

developed in a single, passing reference by one witness, where neither party mentioned it in opening statements or closing arguments, where the parties otherwise focused on the critical issue of whether Watson committed the charged offenses, and where the evidence amply supported the conviction. *See Sanders v. State*, 255 S.W.3d 754, 762 (Tex. App. – Fort Worth 2008, pet. ref'd) (holding that any error in the admission of extraneous-offense evidence was harmless where: (1) the State spent very little time developing it through a single witness; (2) the State did not mention the extraneous offense at all in its opening statement and mentioned it only briefly in closing arguments; and (3) the State went on to focus solely on the testimony about the charged sexual offenses at issue); *see also Harssema v. State*, No. 05-18-00898-CR, 2020 WL 831614, at *6-7 (Tex. App. – Dallas Feb. 20, 2020, pet. filed) (mem. op., not designated for publication) (in a trial for sexual assault of a child, holding that admission of extraneous-offense evidence, consisting of testimony that the defendant brought the victim marihuana on a separate occasion, was harmless where: (1) the evidence of the charged offense was strong; (2) the complained-of evidence was not likely to detract the jury's consideration of the central issue before it – whether the defendant sexually assaulted the victim; (3) the State did not emphasize the extraneous-offense evidence and, instead, briefly mentioned it in closing argument and developed it in fewer than 10 questions; and (4) the complained-of evidence happened to fit within the State's "grooming" theory); *Tellez v. State*, No. 14-98-01390-CR, 2001 WL 777566, at *3-4 (Tex. App. – Houston [14th Dist.] July 12, 2001, pet. ref'd) (not designated for publication) (holding that the erroneous admission of extraneous-offense evidence consisting of the defendant's possible possession of 9.5 pounds of marihuana was harmless where, in part, the extraneous-offense evidence played "a very minor role" in the trial – with only two witnesses testifying about it across only nine pages of the

13

reporter's record – and where the State made no mention of marihuana in closing argument).

Having found any error in admission of Watson's marihuana use harmless, we overrule his third and final sub-point in this appeal.

## IV. CONCLUSION

The trial court's judgment is affirmed.


GINA M. PALAFOX, Justice

August 10, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

14