**Affirmed and En Banc Majority, Concurring, and Dissenting Opinions filed December 10, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00154-CR

---

### THE STATE OF TEXAS, Appellant

### V.

### JOHN WESLEY BALDWIN, Appellee

---

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1527611**

---

### EN BANC CONCURRING OPINION

In this interlocutory appeal from an order granting a motion to suppress the majority concludes the search warrant affidavit did not contain sufficient facts to establish a fair probability that a search of the cellphone found in Baldwin's vehicle would likely produce evidence in the investigation of the murder. En route to that conclusion the majority analyzes the nexus between Baldwin's vehicle and the offense and concludes there was no nexus between Baldwin's vehicle and the alleged

capital murder. I disagree with the majority's conclusion that there was no nexus between Baldwin's vehicle and the offense. Because I agree with the majority's conclusion that the search warrant affidavit did not establish a nexus between criminal activity and the cellphone I concur in the court's judgment.

The background facts are sufficiently stated in the en banc majority and dissenting opinions. I write separately to address the trial court's ruling on probable cause and reasonable inferences.

I agree with the dissent's analysis with regard to the nexus between the vehicle Baldwin was driving and the alleged offense[1]. As noted by the dissent, however, that does not end our analysis. Relying on *Riley v. California*, 573 U.S. 373, 401 (2014), which addressed the warrantless search of a cellphone incident to arrest, the dissent correctly notes that the evidence showing a nexus between the vehicle and the alleged offense is not sufficient by itself to support the search of the cellphone. There must have been additional facts in the affidavit establishing probable cause that a search of the cellphone would likely produce evidence in the investigation of the capital murder. *See* Tex. Code Crim. Proc. art. 18.0215(c)(5)(B).

We normally review a trial court's motion-to-suppress ruling under a bifurcated standard of review, under which we give almost total deference to the trial court's findings as to historical facts and review de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However,

---

[1] The affidavit references twice to a "white 4-door sedan", once to "a white, 4-door Lexus vehicle, bearing Texas license plate #GTK-6426," once to "a white, 4-door vehicle, similar in appearance to the white Lexus registered under license plate GTK-6426," and once to "the vehicle" when referring to a vehicle observed to have circled three times in front of the crime scene. Known to the citizen informants, and to police, was distinctive body damage including a two to three foot gash in the right quarter panel and a distinctive dent on the rear facing portion of the trunk. However, since the facts describing the distinctive nature of the vehicle were not included in the affidavit, this specificity is not included in our analysis of the magistrate's knowledge.

2

when the trial court determines probable cause to support the issuance of a search warrant, credibility is not at issue; rather, the trial court grants or denies a motion to suppress based on what falls within the four corners of the affidavit. *Id*. When reviewing a magistrate's decision to issue a warrant, appellate courts as well as trial courts apply a highly deferential standard of review because of the constitutional preference for searches conducted under a warrant over warrantless searches. *Id*. As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *Id*. We are not to view the affidavit through hypertechnical lenses; instead, we must analyze the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners. *Id*. When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id*. at 272; *see also Foreman v. State*, Nos. PD-1090-18; PD-1091-18, 2020 WL 6930819 at *3 (Tex. Crim. App. Nov. 25, 2020).

Although no single rubric definitively resolves which expectations of privacy are entitled to protection under the Fourth Amendment to the United States Constitution, the analysis is informed by historical understandings of what was deemed an unreasonable search and seizure when the Fourth Amendment was adopted. *Carroll v. United States*, 267 U.S. 132, 149 (1925). On this score, the Supreme Court has recognized that the Fourth Amendment seeks to secure "the privacies of life" against "arbitrary power." *Boyd v. United States*, 116 U.S. 616, 630 (1886). Second, and relatedly, the Court recognized that a central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance." *Carpenter v. United States*, — U.S. —, 138 S. Ct. 2206, 2213–14 (2018) (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

The Fourth Amendment, as well as Article 1, section 9 of the Texas

Constitution, requires that a warrant affidavit establish probable cause to believe a particular item is at a particular location. *Jennings v. State*, 531 S.W.3d 889, 892 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). The core of the Fourth Amendment's warrant clause and article I, section 9, of the Texas Constitution is that a magistrate may not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *see* U.S. Const. amend. IV; Tex. Const. art. I, § 9. Under the Fourth Amendment, probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at a specified location. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *Long v. State*, 525 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). This standard is "flexible and nondemanding." *Bonds*, 403 S.W.3d at 873.

Probable cause must be found within the "four corners" of the affidavit supporting the search warrant. *McLain*, 337 S.W.3d at 271. Magistrates are permitted to draw reasonable inferences from the facts and circumstances contained within the four corners of the affidavit. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). However, "[w]hen too many inferences must be drawn, the result is a tenuous rather than substantial basis for the issuance of a warrant." *Id.* at 157. Probability cannot be based on mere conclusory statements of an affiant's belief. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). A reviewing court's assessment of the affidavit's sufficiency is limited to "a reasonable reading" within the four corners of the affidavit while simultaneously recognizing the magistrate's discretion to draw reasonable inferences. *Duarte*, 389 S.W.3d at 354.

The Court of Criminal Appeals has observed that "a cell phone is unlike other

containers as it can receive, store, and transmit an almost unlimited amount of private information" that "involve[s] the most intimate details of a person's individual life, including text messages, emails, banking, medical, or credit card information, pictures, and videos." *State v. Granville*, 423 S.W.3d 399, 408 (Tex. Crim. App. 2014). Because such information may or may not be "associated with criminal activity," depending on the circumstances, the State must prove on a case-by-case basis that the incriminating nature of the cell phone was immediately apparent to the officers who seized it, based on the facts and circumstances known to the officers at the moment the phone was seized.

"Regarding computers and other electronic devices, such as cell phones, case law requires that warrants affirmatively limit the search to evidence of specific crimes or specific types of materials." *Diaz v. State*, 604 S.W.3d 595, 605 (Tex. App.—Houston [14th Dist.] 2020, pet. granted). In *Diaz*, this court found the search warrant affidavit sufficiently connected the cellphone with the offense being investigated. *Id.* at 604 ("The affidavit stated that two men were involved in the home invasion and that police recovered several parts of one or more cell phones at the scene. From this, the magistrate reasonably could infer that the perpetrators possessed or utilized one or more cell phones before or during the planning or commission of the offense and that any recovered cell phones could have evidence of the offense."). In coming to that conclusion, however, the court did not rely on the affiant's assertions that "the majority of persons, especially those using cellular telephones, utilize electronic and wire communications almost daily" or that "individuals engaged in criminal activities utilize cellular telephones and other communication devices to communicate and share information regarding crimes they commit." *Id.* The *Diaz* court found sufficient probable cause in the affidavit absent those broad generalizations. *Id.*

This court has consistently followed the same analysis with regard to cellphone searches recognizing facts stated in the affidavits that connected the cellphone to be searched with the offense alleged. *See Walker v. State*, 494 S.W.3d 905, 908–09 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (affidavit stated that defendant admitted shooting complainant and that defendant and complainant communicated by cellphone and exchanged messages and phone calls around the time of the shooting); *Aguirre v. State*, 490 S.W.3d 102, 116–17 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (affidavit stated that cellphone was used to photograph child complainant in child sexual assault prosecution); *Humaran v. State*, 478 S.W.3d 887, 899 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (affidavit identified defendant's disturbance call as the reason that sheriff's deputies were initially dispatched to the scene and stated that defendant acted with another person to destroy evidence).

The State relies on *Thomas v. State*, No. 14-16-00355-CR, 2017 WL 4679279, at *4 (Tex. App.—Houston [14th Dist.] Oct. 17, 2017, pet. ref'd) (mem. op. not designated for publication)[2] and *Checo v. State*, 402 S.W.3d 440, 448 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) each of which relied on affidavits with more specific facts than in this case. In *Thomas*, the affidavit noted that a cellphone was found in a vehicle connected to an armed robbery and that phone calls had been exchanged between co-defendants in which one of the co-defendants admitted that he "hit a lick," which is street slang for robbery, and that the police had caught a co-defendant. 2017 WL 4679279 at *3. In upholding the sufficiency of the affidavit to support the search of the cellphone this court referenced use of the phone to report the robbery and a co-defendant being caught. *Id.* at *4. In *Checo*, this court upheld

---

[2] We are not bound by this unpublished decision in a criminal case, *see* Tex. R. App. P. 47.7(a), but address it here because the State cited it in support of its argument that the trial court erred in granting the motion to suppress.

6

the sufficiency of an affidavit to support search of a computer for child pornography. 402 S.W.3d at 449–50. The affidavit in *Checo* not only relied on the affiant's training and experience that child pornographers kept child pornography on computers, but also stated that a complainant reported the defendant showing child pornography to her on a computer. *Id.* at 448.

Each of the cases from this court cited by the State and by the dissent contained more particular facts tying the cellphone to the alleged offense than the affidavit in this case. The "bare bones" affidavit in this case lacks sufficient indicia of probable cause because it fails to establish a nexus between the specific crime for which evidence is sought and the cellphone to be searched. The affidavit in this case goes no further than broad statements that "criminals often use cellphones," and "criminals often make plans on cellphones." The dissent recognizes that these broad generalizations "exemplif[y] the sort of generalization that does not suffice to establish probable cause, at least under contemporary standards where cellphones are still used by nearly everyone, law-abiding or not."

Having analyzed the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners and deferring to all reasonable inferences that the magistrate could have made, I agree with the en banc majority's conclusion that the affidavit did not contain sufficient facts to establish a fair probability that a search of the cellphone found in Baldwin's vehicle would likely produce evidence in the investigation of the murder. The affiant provided no facts that a cellphone was used during commission of the offense either directly or indirectly such that the magistrate could reasonably infer that evidence of the crime could be found on the cellphone. With these thoughts, I concur in that portion of the en banc majority opinion addressing search of the cellphone.

7

/s/ Jerry Zimmerer
   Justice

En Banc Court consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, and Poissant. Justice Bourliot authored an En Banc Majority Opinion, which Justices Spain, Hassan, and Poissant joined in full, and which Justice Zimmerer joined as to Part II. Justice Zimmerer authored an En Banc Concurring Opinion. Justice Christopher authored an En Banc Dissenting Opinion, which Chief Justice Frost and Justices Wise and Jewell joined.

Publish — Tex. R. App. P. 47.2(b).