

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00295-CR

Edward Arnold **FEW**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 23-8847
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 22, 2026

AFFIRMED

Appellant Edward Arnold Few challenges his conviction on one count of aggravated sexual assault of a child and one count of indecency with a child by exposure. We affirm the trial court's judgment.

**BACKGROUND**

In May 2023, then-seven-year-old "Elsa,"[1] her father, J.A., and her younger sister visited Few's cell phone repair business. Few was the only employee present that day, and the State presented evidence that he was the only person who worked in the cell phone repair business. J.A. testified that while they were there, Few told him he could go to a different part of the building to get a soda. J.A. did so, and he took Elsa's sister with him while Elsa stayed behind. Elsa reported that while her father and sister were gone, "That guy [who worked at the cell phone repair business] . . . stuck his finger in [Elsa's] bottom." Photographs of Elsa, including a photograph that the State alleged showed her genitals, were later extracted from Few's business and personal cell phones.

Few was indicted for four offenses, but the State elected to proceed only on count 2, aggravated sexual assault of a child, and count 4, indecency with a child by exposure. After hearing the evidence presented at trial, the jury found Few guilty of both counts and recommended sentences of 99 years' incarceration and 10 years' incarceration, respectively. The trial court signed a judgment consistent with the jury's verdict and ordered Few to serve his sentences consecutively. Few appealed.

**ANALYSIS**

Few raises fifteen appellate issues challenging the evidence the State presented at trial. In his sixteenth and final issue, he argues that he was unconstitutionally punished twice for the same conduct.

---

[1] To protect the privacy of the child complainant, this opinion identifies her by the pseudonym the parties used for her at trial and identifies her father and grandmother by their initials. TEX. R. APP. P. 9.10(a)(3).

***Issue 1: Untimely Disclosure***

In his first issue, Few argues the trial court erred by denying his motion to exclude "two Cellebrite extraction reports generated from Few's personal and business cellphones." Few contends the State violated Texas Code of Criminal Procedure Article 39.14 because it did not disclose these reports to him until six days before trial. He further argues that because of this untimely disclosure, the trial court should have excluded both the extraction reports and the photos and videos obtained from the cell phone extractions.

*Standard of Review and Applicable Law*

We review a trial court's evidentiary rulings under an abuse of discretion standard. *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024). "As long as a trial court's evidentiary ruling is within the zone of reasonable disagreement, this Court will not intercede." *Id.* at 689. We will uphold an evidentiary ruling "if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Article 39.14 of the Texas Code of Criminal Procedure, also known as the Michael Morton Act, provides:

> as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

Tex. Code Crim. Proc. art. 39.14(a). As used in Article 39.14, material "means having a logical connection to a consequential fact and is synonymous with relevant[.]" *Watkins v. State*, 619

S.W.3d 265, 290 (Tex. Crim. App. 2021) (internal quotation marks omitted). Article 39.14 thus grants Texas defendants "a general statutory right to discovery . . . beyond the guarantees of due process." *Id.* at 291. The Court of Criminal Appeals recently held that when the defendant makes a timely request, Article 39.14 requires the State to turn over material evidence in its possession even if the prosecutor is not aware the evidence exists—for example, if the investigating law enforcement agency holds evidence that it has not told the prosecutor about. *See Heath*, 696 S.W.3d at 683.

*Application*

For the purpose of this analysis, we will assume that Few timely filed an Article 39.14 request for the extraction reports and that those reports were material.[2] In his appellate brief, Few contends the State did not timely disclose the reports because "[t]he extraction reports were generated on July 20, 2023. . . . [y]et the State failed to disclose those reports for eight months."

The State's forensic expert described an extraction report as "a pdf version of the extraction data," and he testified that "[t]he extraction itself has got much more data in it" than the extraction reports. The record shows that the State's investigators began retrieving the data extracted from Few's cell phones—the images and videos admitted as State's Exhibits 22–25 and 27–29—on July 20, 2023, and continued generating data from the phones for several months.

But Few did not argue below that the State failed to timely disclose the extracted images and videos. He argued only that the State failed to timely disclose the extraction *reports*. In his written motion to exclude the extraction reports, he argued that the State's forensics expert "did

---

[2] Few contends that he requested the evidence gathered from his cell phones on October 2, 2023. While the clerk's record contains several discovery requests filed on October 2, 2023, those requests do not ask the State to turn over any cell phone extraction reports or other evidence obtained from Few's cell phones. The discovery requests in our record ask the State to disclose outcry or hearsay statements; electronically recorded interviews of Elsa, her father, her grandmother, and "purported outcry witnesses"; and lists of the State's trial witnesses and expert witnesses. However, Few repeatedly asserted both below and in this court that he timely requested the cell phone extraction reports, and the State has not disputed those assertions.

not generate a Cellebrite Report until **8 months after** completing the cell phone dumps or extractions," (emphasis in original) and he stated that the defense team received the reports after Few, his attorney, and his forensic investigators had already reviewed the extracted data. During the hearing on his motion to exclude, he told the trial court that the extraction reports "didn't exist until eight days before trial." He also asserted that the State disclosed the extraction reports to him six days before trial—*i.e.*, two days after Few himself contended the reports were first created.

Few's argument on this point appears to rest on an assumption that because the State had his cell phones in its possession and had extracted and disclosed data from them, it was also required to create and disclose the extraction reports. But we do not read either the text of Article 39.14 or the Court of Criminal Appeals's recent analysis in *Heath* as imposing an obligation to create extraction reports that did not then exist. *Cf. Heath*, 696 S.W.3d at 701 ("If a simple request to law enforcement for an item of discovery can result in its disclosure, as it did in this case, then disclosure is reasonably capable of being accomplished."). "[T]he disclosure requirements of Article 39.14 are limited to pre-existing documents and items already in the State's possession, meaning that the trial court cannot order the State to create a document that is not already in its possession, custody, or control, even after the passage of the Michael Morton Act. . . . Stated otherwise, the State is only obligated to disclose what it possesses." *In re State*, 659 S.W.3d 1, 14–15 (Tex. App.—El Paso 2020, orig. proceeding); *see also Mitchell v. State*, No. 01-23-00251-CR, 2024 WL 187385, at *7 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op., not designated for publication) (noting State is not required "to create any document that does not already exist").

In *Heath*, the untimely disclosed evidence was a 9-1-1 recording that came into existence approximately two years before trial and which was known to and in the possession of law

enforcement, but which the prosecutor did not learn about until shortly before trial. *Heath*, 696 S.W.3d at 683–84. The Court of Criminal Appeals held that because "law enforcement officers are agents of the State," the evidence was "in the State's possession" well before trial and thus was not disclosed "as soon as practicable" after the defendant requested it. *Id.* at 695–702. The Court of Criminal Appeals also held that under the facts of that case, the trial court had authority to exclude the evidence altogether, even though the defendant did not request a continuance.[3] *Id.* at 707–08.

*Heath* is distinguishable from this case. As explained above, Few expressly represented to the trial court that the extraction reports did not exist until two days before the State disclosed them. While we agree that the State had a statutory obligation to turn over the extraction reports "as soon as practicable" once they actually existed, we decline to hold that it was required to create them. *See In re State*, 659 S.W.3d at 14–15; *Mitchell*, 2024 WL 187385, at *7. On this record, we cannot say the trial court acted outside the zone of reasonable disagreement by concluding that the State disclosed the extraction reports "as soon as practicable[.]" TEX. CODE CRIM. PROC. art. 39.14(a). We overrule Few's first issue.

### *Issues 2–8: Admission of Photo and Video Evidence*

In Issues 2–8 of his brief, Few challenges the admission of State's Exhibits 22, 23, 24, 25, 27, 28, and 29. Those exhibits contained images and/or videos extracted from Few's cell phones.

---

[3] The State argues that Few waived his Article 39.14 complaint because he did not request a continuance. Because the State was the appellant in *Heath*, the Court of Criminal Appeals did not consider whether a defendant must seek a continuance to preserve an Article 39.14 complaint for appellate review. *See Heath*, 696 S.W.3d at 708. In light of our disposition of Few's Article 39.14 issue, we similarly need not answer that question here. We note, however, that the *Heath* court explained that a trial court has discretion to determine whether a continuance or exclusion is the more appropriate remedy. *Id.* at 707–08.

Few argued below that he did not create or knowingly possess the images, and he contended both below and in this court that at least one of them constituted child pornography.[4]

*Standard of Review and Applicable Law*

As explained above, we review the admission of evidence for an abuse of discretion and will not reverse a trial court's evidentiary ruling unless it was outside the zone of reasonable disagreement. *Heath*, 696 S.W.3d at 688–89. To preserve an appellate complaint about the erroneous admission of evidence, the defendant "must have made a proper and specific objection at the time the evidence was offered[.]" *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). Additionally, in the absence of a running objection or a request for a hearing outside the jury's presence, "the law in Texas requires a party to continue to object each time inadmissible evidence is offered." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

*Application*

A. Pre-Trial Objections

On April 4, 2024, before the parties began voir dire, Few re-urged his objection to the cell phone data based on the purportedly untimely disclosed extraction reports. He also asked the trial court to require "that any sort of child pornography that the State does admit only be published to the jury through oral or written description, and that the actual depiction not be provided to [the jury]." Later, during the testimony of the forensic expert through which the State offered the challenged exhibits, Few stated:

> I renew my objection that it be published in any way, shape or form, other than in written format. Again, it's only for shock value to this jury. It can absolutely be done by description only. . . . I've urged my objection to the publication in anything other than written description.

---

[4] Few was not charged with possession of child pornography, and we express no opinion about whether the evidence in this case would have supported a conviction for that offense. *See* TEX. PENAL CODE § 43.26.

Few did not specify whether these objections to "any sort of child pornography" applied to some or all of State's Exhibits 22, 23, 24, 25, 27, 28, and 29. He also did not explain why he believed the exhibits' "shock value" rendered the images themselves inadmissible but did not pose a similar obstacle to an oral or written description of their contents. *Compare Emery v. State*, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994) ("We have consistently held that photos are generally admissible where verbal testimony about the same matters is admissible."), *with Erazo v. State*, 144 S.W.3d 487, 489–92 (Tex. Crim. App. 2004) (concluding the principle noted in *Emery* "when viewed in isolation is far too broad" but explaining, "If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects."). Finally, he did not elaborate on his "shock value" objection or state which, if any, of the Texas Rules of Evidence supported that objection. Accordingly, we conclude this objection was not specific enough to preserve anything for our review. *See* TEX. R. APP. P. 33.1; *Day v. State*, 696 S.W.3d 720, 728–29 (Tex. App.—San Antonio 2024, pet. ref'd).

Few requested and was granted a running objection "to all cell phone data, cell phone dump, cell phone report, any testimony resulting from the cell phone data extractions in this matter that [he] previously requested be limined out in our hearing on [April 4]"—*i.e.*, based on his objection to the purportedly untimely disclosure of the cell phone extraction reports. He did not request a running objection on any other grounds. *See, e.g.*, *Lucero v. State*, 709 S.W.3d 739, 744 (Tex. App.—Amarillo 2025, pet. ref'd) (running objection preserves error if it "constitutes an objection stating the specific grounds for the ruling requested").

B. State's Exhibit 22–24

State's Exhibit 22 contained photographs that the State contends are of Elsa and which were extracted from Few's work phone. One of the photos showed "the neck and collar and perhaps the side of the jaw of what looks to be a female child," and the other was "an image of a prepubescent female with the front part of her pants being pulled down exposing her genitals." State's Exhibits 23 and 24 contained photos and videos of unidentified children and teenagers, both clothed and unclothed, that were extracted from Few's work phone.

Other than the "shock value" and running objections discussed above, Few objected to State's Exhibit 22 based on his contention that the "proper chain of custody [was] not followed here." When the State offered State's Exhibits 23 and 24 into evidence, Few stated "Same objection, Judge" and "same running objection."

On appeal, Few does not assert the objections described above. Instead, he now argues that the images in State's Exhibits 22, 23, and 24 were irrelevant and unfairly prejudicial. Because these complaints do not comport with the objections Few raised at trial, they are waived. *See, e.g.*, *Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003); *Trejo v. State*, 683 S.W.3d 815, 821 (Tex. App.—San Antonio 2023, no pet.). We overrule Few's second, third, and fourth issues.

C. State's Exhibit 25

In his fifth issue, Few argues the trial court abused its discretion by admitting State's Exhibit 25, which consisted of photos extracted from Few's work phone of: (1) unidentified "toddlers that are in various states of undress"; and (2) another copy of the photo of "a prepubescent female with the front of her pants being pulled down" that was also admitted as

State's Exhibit 22.[5] When the State offered Exhibit 25 at trial, Few stated, "Same running objections, Judge, and relevancy."

On appeal, Few again contends that State's Exhibit 25 was irrelevant. We disagree. Evidence is relevant if it has a tendency to make any fact of consequence to the action more or less probable than it would be without the evidence. TEX. R. EVID. 401; *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Count 4 of the indictment alleged that Few exposed Elsa's genitals with intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE § 21.11(a)(2)(B). Because State's Exhibit 25 included a photograph of a female child's exposed genitals that was found on Few's phone, the trial court could have reasonably determined that the exhibit had a tendency to make a required element of the charged offense more probable than it would be without that evidence. *See id.*; TEX. R. EVID. 401.

Few also argues on appeal that the images in State's Exhibit 25 were unfairly prejudicial and needlessly cumulative. Because he did not raise these arguments below, he waived them. *See Guevara*, 97 S.W.3d at 583; *Trejo*, 683 S.W.3d at 821.

We overrule Few's fifth issue.

### D. State's Exhibit 27

In his sixth issue, Few argues the trial court erred by admitting State's Exhibit 27, which was a photograph extracted from Few's personal phone that showed "a collage of three photographs put together side by side." One third of the collage showed an adult hand "pulling down the clothing" of "a prepubescent child" to expose her genitals. The State alleged at trial that the "prepubescent child" depicted in the photo was Elsa. Another third of the collage was a side

---

[5] In his brief, Few contends that "[n]one of the photos [in State's Exhibit 25] depicted Elsa." He acknowledges, however, that the exhibit also contained "a duplicate photo from previously admitted exhibits," and he does not describe that duplicate photo.

profile view of a child's exposed buttocks; the child's face and genitals are not visible in that picture. The final third of the collage showed Elsa's face. When the State offered this exhibit into evidence, Few stated, "defense's running objections, 401, 402, 403, 902, and under 39.14, *Watkins*." On appeal, he argues only that the exhibit was irrelevant and unfairly prejudicial.

A paper copy of the same collage shown in State's Exhibit 27 was later admitted as State's Exhibit 42. The only difference between the two is that in State's Exhibit 42, a Post-it note was used to cover the exposed genitals in the second third of the collage. However, the Post-it note does not cover the entire image, and enough of the image is visible to permit a reasonable deduction that it shows a child's genitalia. When the State offered State's Exhibit 42 into evidence, Few stated, "No objection, Judge." We conclude that any error in the admission of State's Exhibit 27 was cured by the unobjected-to admission of State's Exhibit 42. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003); *Martinez*, 98 S.W.3d at 193.

But even if we assume the admission of State's Exhibit 42 did not cure any error in the admission of State's Exhibit 27, Few's complaint about the prejudicial nature of State's Exhibit 27 is not properly before us. "A general '403' objection . . . is not sufficient to preserve error because it fails to identify for the trial court which of the five distinct grounds for excluding evidence listed in the rule is being argued as a basis for exclusion." *Checo v. State*, 402 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also* TEX. R. EVID. 403; TEX. R. APP. P. 33.1. Because Few did not specify below that his Rule 403 objection was based on unfair prejudice, he did not preserve that complaint for our review. *See Checo*, 402 S.W.3d at 451; *see also Alvarez v. State*, 491 S.W.3d 362, 370 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (exhibit's prejudicial nature does not render it inadmissible under Texas Rule of Evidence 403 unless its probative value is substantially outweighed by the danger of unfair prejudice).

Because Rules of Evidence 401 and 402 deal only with relevance, we will assume without deciding that Few's references to "401" and "402" were sufficient to preserve that argument for our review. *See* TEX. R. EVID. 401, 402. But because count 4 of the indictment required the State to prove that Few caused Elsa to expose any part of her genitals, the trial court could have reasonably determined that a photo the State claimed showed exactly that was relevant to this action. *See* TEX. R. EVID. 401, 402; *Beham*, 559 S.W.3d at 478; *see also Sarabia v. State*, 227 S.W.3d 320, 323 (Tex. App.—Fort Worth 2007, pet. ref'd) (image of child pornography was admissible where it was "evidence of a crime or bad act committed against [the child victim]").

We overrule Few's sixth issue.

E.  State's Exhibit 28–29

In his seventh and eighth issues, Few argues the trial court erred by admitting State's Exhibits 28 and 29, which consisted of more images and videos extracted from Few's personal phone. When the State offered these exhibits at trial, Few stated, "Defense urges the same running objections as before" and "[s]ame running objections, Your Honor." Few now argues on appeal that the images in State's Exhibits 28 and 29 were irrelevant, unfairly prejudicial, and needlessly cumulative. These appellate complaints do not comport with the objections Few raised at trial and are thus waived. *See Guevara*, 97 S.W.3d at 583; *Trejo*, 683 S.W.3d at 821. We overrule Few's seventh and eighth issues.

*Issues 9–12: Hearsay Testimony*

In his ninth, tenth, eleventh, and twelfth issues on appeal, Few argues that four witnesses— C.B., Lisa King, Dionisia Hernandez, and T.S.[6]—presented improper outcry testimony that should

---

[6] As explained more fully below, T.S.'s daughter, J.S., testified that Few assaulted her. Because J.S. was a minor when she testified and when Few allegedly assaulted her, we will use initials to refer to both her and T.S. TEX. R. APP. P. 9.10(a)(3).

have been excluded as inadmissible hearsay. *See* Tex. Code Crim. Proc. art. 38.072; Tex. R. Evid. 801, 802.

A. <u>C.B.</u>

C.B. is Elsa's paternal grandmother. She babysat Elsa and her sister on the evening of the alleged assault, and she made the report to law enforcement that led to Few's arrest. Near the beginning of C.B.'s testimony, after she identified herself and testified briefly about J.A. (who is her son and Elsa's father), the parties approached the bench at Few's request.

At that point, C.B. had not offered any testimony that could reasonably be interpreted as either hearsay or outcry testimony. *See* Tex. R. Evid. 801, 802; Tex. Code Crim. Proc. art. 38.072. Nevertheless, Few noted during the bench conference that C.B. was "not listed as one of the outcry witnesses." The State responded, "I don't think she's an outcry because what she describes isn't an offense." The following exchange then occurred:

| | |
|---|---|
| Defense Counsel: | I don't know, I don't think any testimony that she has to provide us is relevant here, beyond her testimony about her son's mental cognitive things. |
| The State: | I disagree, Judge. She's the one that got this whole ball started. |
| The Court: | Then she isn't an outcry witness? |
| The State: | Well, not under the rules because it's not an offense. |
| The Court: | What's not an offense? |
| The State: | That he looked at her bottom. That he pulled down her pants and looked at her bottom. |
| The Court: | Is that what the indecency is? |
| The State: | Not looking at the buttocks, no. |

| | |
|---|---|
| Defense Counsel: | And Judge, I'd ask for a proffer of testimony at this point in time, outside the presence of the jury just to see what it is that she plans on going into. |
| The State: | Well, I don't think – I mean you would get one if it was an outcry, you'd get a hearing outside the presence of the jury. But I don't think you just get to hear what she has to say. |
| Defense Counsel: | Your Honor – |
| The State: | If you have an objection because it's hearsay, then you can object. |
| Defense Counsel: | Well, I don't believe that, beyond the testimony that she just provided, anything else she has to say is relevant and it's just going to confuse the issues with the jury and it's not material to this case. |
| The State: | How do you even know what else she's going to say? |
| Defense Counsel: | What else could she say that's relevant to this case if she is not your outcry witness? |
| The State: | Well, how do you know it's not relevant if you haven't even heard it or the question? |
| The Court: | Okay. I'll overrule the objection. Let's continue. |

On appeal, Few contends that after this discussion, the State engaged in artful questioning that was designed to elicit improper outcry testimony. *See Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) ("[W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly."). Few specifically argues that one of the questions the State asked C.B.—"[W]hile [Elsa] was in your custody that day, did she—without going into what she said, did she say anything to you that prompted you—that concerned you?"—was an improper "attempt to convey to the jury [that] Elsa outcried to [C.B.] about the alleged incident earlier that day."

To preserve a complaint about the admission of hearsay testimony, including outcry witness testimony, the defendant must assert a timely and specific objection. *See* TEX. R. APP. P. 33.1; *Bargas v. State*, 252 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Rosas v. State*, 76 S.W.3d 771, 776–77 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Schaffer*, 777 S.W.2d at 113 (noting the appellant in that case asserted a hearsay objection to the improper questioning). Few did not do so. While the exchange quoted above shows that Few suggested C.B. *might* eventually offer objectionable outcry testimony, he did not make a hearsay objection during that discussion, and he primarily argued that her testimony was not relevant. When the State later asked the question Few challenges in his brief, he did not object to either the question or to C.B.'s answer to it. He also did not object to C.B.'s testimony that her concerns about what Elsa told her compelled her to call Child Protective Services ("CPS").

Few did not assert a hearsay objection until C.B. testified that CPS told her she "needed to call [her] local police department." But by then, the jury had already heard unobjected-to testimony that Elsa told C.B. something that prompted her to call CPS. *See Valle*, 109 S.W.3d at 509 ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection."). Additionally, C.B. later again testified—this time without objection and in response to defense questioning—that she "was told to call" police. *See id.* For these reasons, we conclude that Few did not preserve his appellate complaint about C.B.'s testimony for our review.

We overrule Few's ninth issue.

B. <u>Lisa King</u>

In his tenth issue, Few argues that the testimony of Lisa King, a Sexual Assault Nurse Examiner who examined Elsa, was inadmissible outcry hearsay because "King was not the first person that Elsa outcried to." He also complains that "there was not a hearing outside the presence

of the jury to determine that the [outcry] statement was reliable." Few did not assert these objections below and therefore waived them. *See* TEX. R. APP. P. 33.1; *Bargas*, 252 S.W.3d at 895. We overrule Few's tenth issue.

### C. Dionisia Hernandez

In his eleventh issue, Few challenges the trial court's admission of testimony by Dionisia Hernandez, a former forensic investigator who interviewed J.S., another child who claimed Few sexually assaulted her. Few argues that Hernandez was not a proper outcry witness for J.S.'s allegations because she was not "the first adult J.S. told what had happened to her" and "there was no hearing outside the presence of the jury to determine that the statement was reliable." Few did not assert these objections below and therefore waived them.[7] *See* TEX. R. APP. P. 33.1; *Bargas*, 252 S.W.3d at 895. We overrule Few's eleventh issue.

### D. T.S.

In his twelfth issue, Few challenges the trial court's admission of testimony from J.S.'s mother, T.S. He argues that T.S. presented outcry testimony even though "there was not a hearing outside the presence of the jury to determine that the statement was reliable," and he claims that "[T.S.] testified beyond the scope of what a witness under Article 38.072 is allowed to testify to." Few also complains that the trial court erred by overruling his hearsay objection to State's Exhibit 46, which contained photographs of text messages that T.S. testified she received from Few.

While Few objected to T.S.'s testimony below, he did so on the grounds that she was a convicted felon; that her testimony was irrelevant, unfairly prejudicial, and would constitute improper character evidence; and that the State had not given him proper notice of its intent to

---

[7] While Few requested and obtained a running objection to the extraneous offense evidence regarding J.S., he did not specify a basis for that objection. *See Lucero*, 709 S.W.3d at 744. Additionally, Few asked Hernandez if she was testifying as an expert or an outcry witness and did not object when she stated she was an outcry witness.

present character evidence under Texas Code of Criminal Procedure Article 38.37. He did not object that she was being called to offer improper outcry testimony or that the trial court had not determined the reliability of the outcry statements. Because Few's appellate complaints about T.S.'s testimony do not comport with the objections he raised below, he waived this issue. *See Guevara*, 97 S.W.3d at 583; *Trejo*, 683 S.W.3d at 821.

Few asserted a hearsay objection to the text messages shown in State's Exhibit 46 and therefore preserved that issue for our review. TEX. R. APP. P. 33.1. As the State notes, however, a party's own statement that is being offered against him is not hearsay. TEX. R. EVID. 801(e)(2)(A). T.S. testified that she received the text messages from a phone number she had previously used to communicate with Few and which she had saved in her phone as Few's number. In light of that testimony, the trial court did not abuse its discretion by overruling Few's hearsay objection and admitting the text messages. *See id.*

We overrule Few's twelfth issue.

*Issues 13–14: Testimony About Unadjudicated/Uncharged Offenses*

In his thirteenth issue, Few argues that the trial court erred by allowing J.S. to testify that Few sexually assaulted her. In his fourteenth issue, he complains that the trial court erred by permitting an adult witness, M.S., to testify that Few sexually assaulted her when she was a child.[8] He contends that both J.S.'s and M.S.'s testimony about these extraneous offenses was inadmissible under Texas Rule of Evidence 403. We will consider these issues together.

"Typically, the State cannot provide evidence of prior 'crime[s], wrong[s], or other act[s]' to show that the defendant 'acted in accordance with that character' or had a propensity to commit the crime." *Alvarez*, 491 S.W.3d at 367 (quoting TEX. R. EVID. 404(b)). However, Article 38.37 of

---

[8] J.S. and M.S. are not related to one another. Because M.S. testified that she was a minor when Few allegedly abused her, we use initials to protect her privacy. TEX. R. APP. P. 9.10(a)(3).

the Texas Code of Criminal Procedure "provides for the admission of evidence of other sex crimes committed by the defendant against children other than the victim of the alleged offense 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of [the] defendant.'" *Belcher v. State*, 474 S.W.3d 840, 846 (Tex. App.—Tyler 2015, no pet.) (quoting TEX. CODE CRIM. PROC. art. 38.37 § 2(b)). Article 38.37 thus "make[s] admissible evidence of the defendant's other sex crimes against children other than the complainant in order to show his propensity to commit the act of child sexual abuse alleged." *Id.* "However, before such evidence is admitted, the trial court must still conduct a balancing test under Rule 403." *Id.* at 847.

Under Texas Rule of Evidence 403, the trial court may exclude otherwise admissible and relevant evidence if its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. TEX. R. EVID. 403; *Alvarez*, 491 S.W.3d at 370. At trial, Few argued that J.S.'s allegations were "highly prejudicial and there is no probative effect" because at that time, Few had not been prosecuted for those acts in Bexar County, where they allegedly occurred. He argued that the acts M.S. alleged occurred "about 30 years ago, 20 years ago" when both M.S. and Few were minors and had "absolutely no bearing on this case."

"In determining whether the prejudicial effects substantially outweigh the probative nature of the evidence, the trial court must consider four factors: (1) 'how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable'; (2) the potential of the evidence 'to impress the jury in some irrational but nevertheless indelible way'; (3) 'the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense'; and (4) [']the force of the proponent's need for this evidence

to prove a fact of consequence[.]'" *Alvarez*, 491 S.W.3d at 370 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)).

Elsa, who was eight years old at the time of trial, testified that when she was at Few's cell phone repair business, the person who was there "stuck his finger in [her] bottom. . . . [j]ust a little bit." She testified that this occurred after J.A. and Elsa's sister "went to go get a drink," that she was by herself with the person who assaulted her, and that the assault ended when she heard her family coming back. She did not identify Few by name during her testimony. As Few notes, Elsa could not remember specific details about the appearance of her alleged assailant, including his skin color; she was not asked to identify her assailant in the courtroom; she could not remember who she first reported the assault to; and there was no physical evidence of the assault. Because Elsa and Few were alone when the alleged assault occurred, this was essentially a "he said, she said" case. *Id.* at 371; *Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.—Texarkana 2015, pet. ref'd). Elsa's credibility was therefore a critical issue at trial. *Alvarez*, 491 S.W.3d at 371.

J.S. testified that when she was eight years old, a man she knew by the name of Edward visited her home. When J.S.'s family members left her and Edward alone in the living room, Edward "lifted up [her] dress," touched her "[o]n [her] back and [her] butt," and "grabbed [her] back and butt] a little bit." J.S. also testified that later that night, after her mother sent her to bed, Edward stood in the open doorway of the bathroom across from J.S.'s bedroom "and then pulled down his pants and played with his private part" while motioning for her to be quiet. Like Elsa, J.S. could not identify Few in the courtroom. However, she testified that the "Edward" who assaulted her was her "mom's friend's friend." J.S.'s mother, T.S., identified Few as the "Edward" her daughter had referred to, and she pointed him out in the courtroom.

On appeal, Few complains that "the substantial time the State took to develop the evidence of the extraneous offense" alleged by J.S. rendered her testimony unfairly prejudicial. But he "does not identify any particular facts about" the acts J.S. alleged that rendered her testimony "uniquely or unfairly prejudicial."[9] *Alvarez*, 491 S.W.3d at 371. He ignores, moreover, that J.S. and Elsa were around the same age when Few allegedly assaulted them and that both girls testified he touched them on their buttocks after their family members left the room. *See Holland v. State*, 702 S.W.3d 836, 842 (Tex. App.—Waco 2024, pet. ref'd) (when there were "significant similarities" between charged offense and extraneous offense, "it was reasonable for the trial court to have determined that the probative force of the evidence was strong and weighed in favor of admission" under Article 38.37).

Unlike Elsa and J.S., M.S. identified Few as her attacker by first and last name and pointed him out in the courtroom. M.S. testified that she first met Few, who was her stepbrother's best friend, when she was "[n]ine or ten" and that he frequently spent nights and weekends at her family's home. She testified that shortly after they met, Few came into her bedroom, "pulled down [her] blankets and started rubbing his hands from [her] butt up to [her] lower back and back and forth." She testified that over time, he began "insert[ing] his fingers in [her] butt and vagina." She also described how his assaults on her escalated from there. She told the jury that Few regularly assaulted her until she was fourteen.

On appeal, Few argues that her testimony was unfairly prejudicial because the acts she alleged "occurred over multiple years" and were "substantially different from" Elsa's allegations.

---

[9] Although Few contends that the Bexar County District Attorney's Office "rejected and dismissed" J.S.'s allegations against Few, the State told the trial court, "The reason Bexar County has not prosecuted is because they could not . . . find [J.S.] and her mother because they had changed telephone numbers and they hadn't called the right number." The record appears to show that J.S.'s allegations led to a Bexar County indictment at some point before the trial in this case.

But like Elsa, M.S. alleged that Few assaulted her by "groping [her] behind" and "insert[ing] his fingers in [her] butt[.]" *See id.* While it is true that M.S. said Few eventually escalated the assaults beyond what happened to Elsa, the record showed that Few had more frequent access to M.S. than he did to Elsa, with whom he interacted only once. Because Elsa and M.S. reported similar encounters with Few, the trial court did not act outside the zone of reasonable disagreement by determining that the overall probative value of M.S.'s testimony outweighed the risk that her later experiences with Few might impress the jury "in some irrational but nevertheless indelible way" or distract from consideration of the indicted offense. *See Alvarez*, 491 S.W.3d at 370.

Additionally, the record shows that the guilt-innocence portion of Few's trial lasted for nearly three full days. All of the extraneous offense evidence about the assaults on J.S. and M.S. came in through four of the State's seventeen witnesses. All four of those witnesses testified in the late morning and early afternoon of day two, and the State also presented evidence from several other witnesses that day. The trial court could have reasonably concluded that the time the State needed to develop the extraneous offense evidence did not pose a risk of unfair prejudice. *See id.*

For the reasons described above, the trial court could have reasonably determined that J.S.'s and M.S.'s testimony "was especially probative of [Few's] propensity to" commit acts like those Elsa alleged. *See Belcher*, 474 S.W.3d at 848. The trial court also could have reasonably determined that J.S.'s and M.S.'s testimony was relevant to Elsa's credibility and was not unfairly prejudicial to Few. *See Alvarez*, 491 S.W.3d at 371. The trial court therefore did not abuse its discretion by concluding that the Rule 403 balancing test did not require the exclusion of J.S.'s and/or M.S.'s testimony. We overrule Few's thirteenth and fourteenth issues.

*Issue 15: Video of J.S.'s ChildSafe Interview*

In his fifteenth issue, Few argues the trial court erred by allowing the State to publish a video excerpt "to depict a motion made by J.S. during her [ChildSafe] interview." Few's brief does not identify when the offending motion appeared in the video.

The record does not show this alleged error. The trial court specifically admitted "no more than 20 seconds of showing [J.S.] with no sound. . . . And just the child, not the motion. . . . For the limited purposes that I've given, it's admitted." The trial transcript shows that the State began playing the video "at 12 minutes and 51 seconds." We have reviewed the video exhibit, and J.S. did not make any motions or gestures at the 12:51 mark or at any point during the twenty seconds before or after that point. *See Fuller v. State*, No. 05-23-00066-CR, 2024 WL 3755280, at * 4 (Tex. App.—Dallas Aug. 12, 2024, pet. ref'd) (mem. op., not designated for publication) (holding any error in admission of video was harmless where "the record does not show the jury ever saw or heard the complained-of part of the video exhibit").

It is true that the entire fifty-one-minute video (without sound) is included in the appellate record. While it is unclear from the record whether the entire video was sent back to the jury room during deliberations, the record shows the jury only deliberated for thirty-eight minutes and thus could not have watched the entire video during that time. *See id.* Furthermore, Few did not object below that the jury was permitted to view any video excerpts that were outside the limited portion the trial court admitted. TEX. R. APP. P. 33.1. Accordingly, even if we assume the complained-of error occurred, Few did not preserve that error for our review.

We overrule Few's fifteenth issue.

*Issue 16: Double Jeopardy*

In his final issue, Few argues the trial court's judgment punishes him twice for the same conduct in violation of his constitutional protections against double jeopardy. "A double-jeopardy claim of multiple punishments for the same offense arises in two contexts: (1) when the greater offense also meets the elements of a lesser-included offense such that the same conduct is punished twice; and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended for the conduct to be punished only once." *Neelys v. State*, 374 S.W.3d 553, 561 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Few contends that indecency with a child by exposure is necessarily a lesser-included offense of aggravated sexual assault of a child and he therefore cannot be punished for both offenses.

"Separate criminal acts committed during a single sexual encounter may be punished separately, but a criminal act (such as exposure or contact) that is committed as part of a continuing sexual assault that results in one complete, ultimate act of penetration may not be punished along with that complete, ultimate act." *Aekins v. State*, 447 S.W.3d 270, 278 (Tex. Crim. App. 2014) (footnote omitted). The Texas Court of Criminal Appeals has recognized, however, that "the protection against double jeopardy is inapplicable where separate and distinct offenses occur during the same transaction." *Phillips v. State*, 787 S.W.2d 391, 394 (Tex. Crim. App. 1990). "A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity." *Aekins*, 447 S.W.3d at 278.

If Few had been convicted and punished for both exposing and penetrating a single part of Elsa's body, his contention on this point might be meritorious. *See id.* at 281–83 (holding that "contact of [victim's] sexual organ by defendant's mouth" and "penetration of [victim's] sexual

organ by defendant's mouth" were same offense for double-jeopardy purposes); *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (concluding, in case where defendant was convicted of both exposing his own sexual organ in the presence of a child and sexually penetrating that child's anus with his sexual organ, that the "exposure was incident to and subsumed by the aggravated sexual assault"). But this record does not show that Few was punished twice for the same act. The indictment in this case alleged that Few penetrated Elsa's anus and exposed her genitals, and the State presented evidence that he committed both acts. Both the Texas Legislature and the Court of Criminal Appeals have recognized that the anus and genitals are separate body parts. *See* TEX. PENAL CODE §§ 22.011(a)(2), 21.11(a)(2)(A); *Loving v. State*, 401 S.W.3d 642, 648 (Tex. Crim. App. 2013).

Additionally, the application paragraphs of the court's charge instructed the jury to consider those acts separately. *See Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012) ("The application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations [and] specifies the factual circumstances under which the jury should convict or acquit[.]"). The application paragraph for count 2, the aggravated sexual assault allegation, specifically instructed the jury that it could not vote to convict Few of that charge unless it found beyond a reasonable doubt that he "cause[d] the penetration of the anus of Elsa . . . with [Few's] finger or an unknown object[.]" The application paragraphs for the lesser-included offenses associated with count 2 similarly instructed the jury to consider only whether Few touched or exposed Elsa's anus. In contrast, the application paragraph for count 4, the indecency allegation, instructed the jury that it could not vote to convict Few of that charge unless it found beyond a reasonable doubt that he caused Elsa "to expose any part of Elsa's genitals[.]" *See Aekins*, 447

S.W.3d at 277 ("The defendant might touch a child's breast; then he touches her genitals. Two separate acts, two separate impulses, two separate crimes.").

The facts of this case do not show that the acts alleged in counts 2 and 4 are "such that the one cannot be committed without necessarily committing the other[.]" *Id.* at 280. The jury theoretically could have determined that Few penetrated, touched, or exposed Elsa's anus but did not expose her genitals, and vice versa. *See Speights v. State*, 464 S.W.3d 719, 723–24 (Tex. Crim. App. 2015). The record therefore does not support a conclusion that the jury's finding of guilt on both counts subjected Few to two punishments for the same conduct. *See id.*

We overrule Few's sixteenth issue.

## CONCLUSION

Having overruled each of Few's appellate issues, we affirm the trial court's judgment.

Lori I. Valenzuela, Justice

DO NOT PUBLISH